HUNTINGTON LIGHT & FUEL COMPANY *v.* BEAVER.

[No. 5,154. Filed April 4, 1905. Rehearing denied June 28, 1905. Transfer denied December 12, 1905.]

1. PLEADING. — *Complaint.* — *Negligence.* — *Gas Explosions.*—A complaint showing that defendant gas company in turning on plaintiff's gas discovered a leak between the house valve and

the street valve; that defendant in turning off such gas preparatory to repairs turned off the house valve instead of the street valve; that the plumber, thinking that such company had turned off the gas at the street valve, began his work of repairs and in some manner unknown to the plaintiff occupant, the gas exploded, causing injuries to plaintiff, shows that such defendant was guilty of negligence. p. 9.

2. NEGLIGENCE.—*Proximate Cause.—Anticipation of Injuries.*— Actionable negligence must be such that an ordinarily prudent person would anticipate that some person in the exercise of a legal right might be injured thereby, and not that the precise injury sued for should happen. p. 10.

3. SAME.—*Proximate Cause.—Gas Explosion.*—Where plaintiff, the tenant of a house, requested defendant gas company to turn on the gas, and defendant after turning on the street valve discovered a leak between such valve and the house valve, and then turned off the house valve awaiting repairs by the owner, the fact that the plumber ignited the leaking gas inadvertently does not prevent defendant's liability, since where injury results from two negligent acts, both actors are liable. p. 10.

4. SAME.—*Turning on Gas.—Leaks.—Failure to Turn Off.*— Where a gas company turns on its gas with the knowledge that the plumbing has lately been tested and found safe, but such company ascertains that there is a leak therein, a failure by such company to turn off such gas constitutes negligence. p. 11.

5. TRIAL.—*Answers to Interrogatories.—Gas Explosions.*—Where the answers to interrogatories to the jury show that defendant gas company turned on the tenant's gas, discovered a leak, failed to turn off the gas, notified tenant to let it alone and defendant would repair it, and that the owner's plumber, without the tenant's knowledge, undertook to repair the plumbing, and in doing so ignited the gas, injuring tenant, the general verdict for tenant is not thereby overthrown. p. 13.

6. SAME.—*Answers to Interrogatories.—Failure to Show by Whom Gas Was Ignited.*—Where the answers to interrogatories to the jury show that defendant gas company negligently failed to turn off the gas after discovering a leak, a failure by the tenant to prove who ignited the gas, which exploded and caused tenant's injuries, does not overthrow a general verdict in tenant's favor. *McGahan* v. *Indianapolis Nat. Gas Co.*, 140 Ind. 335, distinguished. p. 13.

7. EVIDENCE. — *Photographs.—Preliminary Proof.*—Photographs are admissible in evidence after preliminary proof of correct-

ness is made, and it is not material that the witness giving such preliminary proof saw the taking of the photographs.   p. 14.

8.   TRIAL.—*Instructions.—Covering Only Branch of Case.*—The trial court may, in an instruction, set out the contentions of parties on a single branch of the case without including the contentions in the whole case.   p. 14.

9.   SAME.—*Instructions.—Invasion of Province of Jury.*—An instruction that "there is some proof tending to show" a certain fact does not invade the province of the jury by leading the jury to believe such fact to be proved.   p. 15.

10.   SAME.—*Instructions.—Refusal to Give.—Answers · to Interrogatories.—Harmless Error.*—The refusal to give a requested instruction is harmless where the answers to the interrogatories to the jury show the facts assumed therein are true.   p. 15.

11.   SAME.—*Instructions Requested Covered by Those Given.*— The refusal to give an instruction already substantially given in other instructions is not error.   p. 16.

From Wabash Circuit Court; *H. B. Shively,* Special Judge.

Action by Albert W. Beaver against the Huntington Light & Fuel Company. From a judgment on a verdict for plaintiff for $2,500, defendant appeals. *Affirmed.*

*Kenner & Lucas, Lesh & Lesh* and *S. E. Cook,* for appellant.

*Warren G. Sayre* and *C. W. Watkins,* for appellee.

ROBINSON, P. J.—Action by appellee for damages for personal injuries resulting from an explosion of natural gas. With their general verdict in appellee's favor the jury returned answers to interrogatories. Over appellant's motions for judgment on the answers and for a new trial judgment was rendered on the verdict. The rulings on these motions and on the demurrer to the amended complaint are assigned as errors.

The complaint avers, in substance: That appellant maintained a system of pipes in the streets and up to the property line of abutting owners for furnishing gas to custom-

ers; that property owners using gas were required to allow appellant the sole right to test the piping, including the piping from the curb or street line to the building where the private pipe-line entered through the building, so that appellant might determine for itself the sufficiency of the piping to insure safety in its use; that one Carey had caused a new house built by her to be piped for gas, and that appellant had tested the same and pronounced it secure, and connected the same with its pipe in the street; that the house was about twenty feet from appellant's valve at the street, which valve was under appellant's exclusive control; that from this valve gas was to be conducted to the house through a private pipe or private service valve at the front of the house, which private pipe was laid about eighteen inches deep, until near the house it was carried upward by use of an elbow to a point where it passed between the stone foundation wall and the framework of the house, and then radiated under the house to different parts thereof; that appellee rented the house, and on May 24, 1898, moved therein, and notified appellant to turn on the gas; that appellant's manager came to make the connection to flow gas through the mixer into the cook stove, but found that gas would not flow through the mixer or into the stove, whereupon he announced to appellee that he would turn off the gas at the street valve, and that he would return later and make the attachment; that thereupon the owner of the building procured a plumber to ascertain the location of the defect in the plumbing; that the owner of the building and the plumber, believing that the manager had turned off the gas at the company's supply valve, and that there was no gas still flowing from the line through the company's valve, and believing that the only test required was of the pipes within the building, attempted to make inspection of the pipes within the building, "but what said plumber did plaintiff does not know;" that, had the gas been turned off

at the street, it could not have reached the cellar, and would not have been there in sufficient quantities to cause the explosion when it did; that by the carelessness, oversight, mistake and negligence of the manager, appellant had turned off the valve at the house, the private property valve, and not the company's valve at the street; that, without the knowledge of appellee, the owner, her agent or the plumber who had done the plumbing, the elbow in the pipe had broken and separated at the point where it was near the wall, and under the ground and invisible to appellee, the owner, agent and plumber, and, by reason of such break, and the mistake, oversight and negligence of appellant's manager in turning off the wrong valve, the gas was "flowing in a heavy volume through the pipes between said company's valve and the house valve, and out through the broken part of said elbow against the wall beneath the ground at a place where there was a seam or crack in said wall through which the gas invisibly flowed and continued to flow at the time said plumber was searching for the leak;" that appellee and the owner and her agent were ignorant of the mistake made by appellant's manager, and were unwarned of danger, believing that no more gas was flowing through the company's valve; that the plumber, without any direction from appellee, by some means unknown to him, ignited the gas under the house, which had permeated through the wall, and to some extent through the house; that without any fault on appellee's part the gas exploded, producing injuries particularly described; that such injuries resulted to appellee without his fault, and by reason of appellant's negligence in failing to turn off the gas at the street, and which the company had on that day turned on at the street valve; that appellant had no right to turn the private valve, but that it was its duty, when searching for a defect in the piping either to or in the house, to turn off the gas at its own valve, and by reason

of its wrongful act in omitting to turn the gas off at its valve where it had turned it on, and by reason of appellant's failing to warn appellee or the owner or plumber that the company's valve stood open and the gas was flowing into the private pipe, and by reason of appellant's manager's so leaving it to flow, and by reason of his neglecting to ascertain where or how the plumbing should be repaired, the "company and the plumber, by some means unknown and unauthorized by this plaintiff, produced said explosion" and the injuries complained of; that the plumber was not employed by appellee, and was not under his control or direction.

Against the sufficiency of the complaint, appellant's counsel urge in the argument that the acts or omissions complained of do not amount to negligence, and that the pleading shows that an independent intervening agency was the proximate cause of the injury.

The complaint proceeds upon the theory that appellant was negligent in failing to turn off the gas at the street valve and stop the flow of gas into the building.

1. When the manager turned on the gas at the street valve, and found that the pipe was not carrying the gas to the stove in the house, he must have known that the gas was leaving the pipe somewhere between the street valve and the terminus of the pipe in the house. He was acting upon the supposition that there was gas in the street line and in the service pipe up to the street valve. There was no escape of gas until after he had opened the street valve. And knowing, as he was bound to know, the dangerous character of natural gas, and the danger arising from its escaping into or under a building, and not knowing at what point after the gas passed the street valve it was leaving the pipe, it can not be said that he was using due care, under all the circumstances, when he undertook to stop the escape of gas into the house by turning off the gas at any point other than at the point where he had turned it

on. The complaint shows appellant's negligence, but the question remains whether the facts pleaded show this negligence to have been the proximate cause of the injury.

The plumber engaged to hunt for the leak was not engaged by either appellant or appellee, but by the owner of the property. It is averred that the plumber, while 2. in the building seeking to locate the leak, ignited the gas, which had permeated the house, resulting in the explosion and injuries. The act of the plumber in igniting the gas, if he did ignite it, was an act of negligence, but can this negligent act be said to be itself responsible for the injury? It argues nothing to say that had the company's manager turned off· the gas at the street valve there would have been no accident. But, it must be said, that the conduct of appellant's manager created an essential condition to the injuries. And while, in the consideration of negligence as a proximate cause of injuries, the distinction between causes and conditions should be kept in view, yet, if appellant created certain conditions by which some subsequent cause, the occurrence of which might have been expected, was rendered hurtful, appellant is liable.. It may be said that the act of the gas being ignited by the plumber could not have been foreseen by appellant, and that it was a cause, the occurrence of which could not have been expected, yet we think appellant's manager was bound to anticipate that if the gas continued to escape into the building it might be ignited in some way and produce injury. "It is, indeed, not necessary," said the court in *Ohio, etc., R. Co.* v. *Trowbridge* (1890), 126 Ind. 391, "that the precise injury which, in fact, did occur should have been foreseen; it is sufficient if ·it was to be reasonably expected that injury might occur to some person engaged in exercising a legal right in an ordinarily careful manner." In the case at bar the negligence of 3. appellant consisted not simply of its failure to shut off the gas at the street valve, but in permitting the

gas to continue to escape into the building. It does not appear from the pleading that the negligent act of the gas being ignited by the plumber broke the line of causation, for the reason that the negligence of appellant in failing to stop the flow of gas, and permitting it to continue to flow into the building, was present and active in the result. The original negligence of appellant was present and active at the time and place of the injury, and contributed to the injury, as did the negligent act of the plumber. The pleading shows there were two causes combining to produce the injury, and, although appellant was responsible for only one of these causes, it can not escape liability because it was not responsible for the other. See *Pennsylvania Co.* v. *Congdon* (1893), 134 Ind. 226, 39 Am. St. 251; *Knouff* v. *City of Logansport* (1901), 26 Ind. App. 202, 84 Am. St. 292; *South Bend Mfg. Co.* v. *Liphart* (1895), 12 Ind. App. 185; *Logansport, etc., Gas Co.* v. *Coate* (1902), 29 Ind. App. 299; *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *White Sewing Machine Co.* v. *Richter* (1891), 2 Ind. App. 331; 21 Am. and Eng. Ency. Law (2d ed.), 490 *et seq.; Lebanon Light, etc., Co.* v. *Leap* (1894), 139 Ind. 443, 29 L. R. A. 342; *Oil City Gas Co.* v. *Robinson* (1881), 99 Pa. St. 1; *Louisville Gas Co.* v. *Gutenkuntz* (1884), 82 Ky. 432.

It is said that it is not alleged in the complaint that appellant knew of any break in the elbow, and, the pipe being a private line, it was not bound to anticipate any leaks. But appellant's manager did know there was a leak in the pipes. He knew after he opened the street valve that gas was escaping into the building, and, as it was his duty to do, he undertook to stop it. It is true the plumbing had previously been tested and found to be secure; but, at the particular time, appellant's manager knew the plumbing was not secure, because after he opened the street valve he had knowledge that gas was

escaping from some part of the pipe. Had he opened the valve at the consumer's request and gone away, relying on the previous test, and not knowing the gas was escaping, a different question would be presented. But in view of the facts pleaded, the previous test is immaterial, because he knew at the particular time that the piping was defective.

In *McGahan* v. *Indianapolis Nat. Gas Co.* (1895), 140 Ind. 335, 29 L. R. A. 355, 49 Am. St. 199, cited by counsel for appellant as controlling in this case, appellant was an experienced plumber, employed by the tenant of a building to locate and remedy the defect in the pipes from which gas was escaping. The company had been repeatedly notified, and had promised to shut off the gas, but had not done so. It was not shown that appellant did not know the gas was escaping. He undertook to locate the defect while the gas was flowing into the pipes. While at work, an explosion occurred. It was not shown how or by whom the gas was ignited. It was held that the court could say as a matter of common knowledge that the injury was not due to spontaneous combustion, and that it was impossible without some agency acting upon the leaking gas. It is stated in the opinion that the facts as they were presented by the complaint raised the inquiry as to whether the alleged negligence of the company was the proximate cause of the injury, regardless of whatever agency intervened; and it is held that, indulging the ordinary presumption against the pleading, in the absence of any averment as to the agency necessary to have intervened, the court would presume that it was a responsible agent, that the presumption most favorable to appellee should be indulged, and that was that the intervening agency was the appellant's own act in carrying a lighted lamp which caused the explosion.

The answers of the jury to interrogatories are not in conflict with the general verdict upon the question of appel-

lant's negligence. They show that the manager turned on the gas at the street valve, and soon afterwards informed appellee that there was something wrong with the pipes under the house. Within a few minutes it was found gas was escaping into the house. The manager then told appellee that the gas would have to be turned off until the pipes under the house were repaired, and he turned the valve at the house. It is found that the manager told appellee to allow no one to touch the house valve, and that when the pipes were repaired he would return and turn on the gas himself, but it is also found that appellee did not know that the gas had not been turned off at the street valve. The findings do not show that appellee had anything to do with igniting the gas.

It is argued that the answers of the jury that there was no evidence as to who ignited the gas, or how it was ignited, excludes every condition authorizing a recovery. But the fact of the explosion is not controverted. Nor do the findings show that appellee had anything to do with igniting the gas. If appellant's negligence in permitting the gas to continue escaping into the building was present and active at the time the accident happened —and in construing the complaint we have held that it was—and ,the gas was neither ignited by appellee, nor became ignited through any fault of his, the agency through which it did become ignited is not of controlling importance. It is true that natural gas will not spontaneously explode, but in this instance it did explode; and, if the explosion was impossible without some agency acting upon the leaking gas, then some agency did act upon it, and the jury's answer can mean nothing more than that the evidence did not disclose what this agency was. If it appeared that the gas was ignited by appellee, or became ignited through his fault, there could be no recovery. But upon this question there is nothing in the answers which contradict the finding of the general verdict in appellee's

favor. The opinion in *McGahan* v. *Indianapolis Nat. Gas Co., supra,* is based upon the proposition that the injured party's complaint failed to show in any way the agency through which the gas was ignited, and, as it was necessarily ignited through some agency, the court would indulge the presumption most favorable to the defendant as to this agency, that is, that it was ignited through the agency of the injured party himself.

Complaint is made under the motion for a new trial of the court's action in permitting certain photographs of the building to be introduced in evidence. The right to introduce photographs in evidence is always dependent upon the making of preliminary proof of their accuracy. This preliminary proof was made. A witness testified that she saw the building "right away" after the explosion, and that the photographs introduced in evidence were photographs of the building after the explosion. It was not material that the witness did not see the photographs taken, but it was material whether the witness, who saw the building immediately after the explosion, could say that the appearance of the building at that time was correctly represented by the photographs.

Objections are urged to certain instructions given. What we have already said with reference to the complaint and answers to interrogatories is applicable to some of the objections urged, particularly those in reference to the question of an independent intervening agency.

In the eleventh instruction the court did not undertake to state the contentions of the respective parties as to the whole case, but only as to one branch of the case; and, as we understand the issue upon that particular branch of the case as disclosed by the record, the court's statement was right.

The court told the jury in the sixteenth instruction: "There has been some proof tending to show that the super-

intendent of the company said to the plaintiff he would turn off the gas." It can not be said that by this instruction the court told the jury what the evidence proved. The jury could not have been misled by the language used, as in the next instruction immediately following the jury were told that "if you find that fact to be proved—that the defendant did say it would turn off the gas—that the plaintiff would have a right to rely," etc. It has been held that "if evidence is to be recapitulated, the jury should not be told what it proves, but only what it may conduce to prove; leaving, however, its weight with them." *Ball* v. *Cox* (1856), 7 Ind. 453; *Huffman* v. *Cauble* (1882), 86 Ind. 591. Even if the instruction was technically erroneous, when taken in connection with the other instructions, we do not think any material injury resulted to appellant.

The second instruction requested by appellant and refused reads: "The complaint avers, amongst other things, that the defendant, by its agent, announced to or in the hearing of the plaintiff that he would turn off the gas at the company's valve in the street, and that the plaintiff did not know that it was turned off at the house valve and not at the street. You are instructed that this is a material averment of the complaint, and unless it has been proved by a preponderance of the evidence, no recovery can be had." In view of the answers to certain interrogatories submitted to the jury at the request of appellant, we can not say that the refusal to give this instruction was harmful to appellant. They answered that appellee knew the manager had turned on the gas at the street valve, and, after the escaping gas was discovered, the manager informed appellee that the gas would have to be turned off, and that he then went to the house valve and turned it off. "Did the plaintiff stand by and see and understand that said gas was turned off at the house valve? A. He did not. At the time said manager turned off said

gas at the house valve did the plaintiff know and understand that said gas had not been turned off at the supply valve at the curb line? A. No." There is evidence in the record to support these answers.

Complaint is made of the court's refusal to give the ninth instruction requested, upon the question of appellee's contributory negligence. The instruction requested is a proper instruction, but the court had already given the sixth instruction requested by appellant, which reads as follows: "If you find from the evidence that the plaintiff knew that the gas had been turned off at the house valve, and that, at the time the plumber came, and went under the house to search for the leak, he knew the gas had accumulated in the house in a sufficient quantity to cause an explosion, if ignited, and that knowing these facts he remained in the house, you may consider these facts in determining whether or not he was guilty of contributory negligence." This instruction substantially covers the instruction requested and refused.

We find no error in the record. Judgment affirmed.