## PERU HEATING COMPANY *v.* LENHART ET AL.

[No. 6,967.   Filed June 30, 1911.]

1. TORTS.—*Joint and Several.*—If several persons are required to perform a duty their failure to perform it, or their negligence in performing it, renders them liable jointly and severally to one injured thereby. p. 324.

2. TORTS.—*Contracts.*—*Damages.*—A defendant may be liable to the plaintiff in tort for damages caused by him, though no contractual relations whatever existed between them. p. 325.

3. NEGLIGENCE.—*Heating Companies.*—*Turning off Heat.*—*Freezing.*—*Flooding.*—*Damages.*—*Proximate Cause.*—*Complaint.*—A complaint by tenants of the first floor of a building, alleging that the defendant landlord had such building piped for hot-water heat, that defendant heating company contracted with tenants of the second floor to furnish heat to them, that such tenants afterward notified such landlord and such company that they did not longer desire such heat, that such defendants so negligently turned off such heat that the pipes froze and burst, damaging the plaintiffs' goods on the first floor, states a cause

of action against both defendants, and sufficiently shows that their negligence was the proximate cause of the damages. pp. 326, 328, 330.

4. CORPORATIONS.—*Public Service.—Heating Companies.—Duties.* —It is the duty of a heating company, furnishing heat to the occupants of a building, to use care commensurate with dangers to be apprehended from the furnishing of such heat. p. 328.

5. NEGLIGENCE.—*Proximate Cause.*—The proximate cause of an injury is the decisive cause. p. 329.

6. TORTS.—*Acts.—Conditions.*—If the defendant's original wrongful act or omission supplied the condition causing the subsequent act to be hurtful, he is liable therefor. p. 329.

7. CORPORATIONS.—*Heating Companies.—Natural Laws.—Notice.*— Heating companies are conclusively presumed to know of the natural laws of freezing, of the climate, and of the injurious results liable to flow from the bursting of pipes. p. 329.

8. CORPORATIONS. — *Heating Companies.— Negligence. — Interrogatories.*—In an action against a heating company and the owner of a rented building for negligence in disconnecting the hot-water heat therefrom, where the interrogatories show that the owner's servant was instructed by the heating company how to disconnect such heat, but where there is nothing in such interrogatories and answers thereto that can negative certain facts, provable under the issues, and which may be assumed as proved in favor of the general verdict, such answers do not overthrow a general verdict against such company. p. 330.

9. TRIAL.—*Wrongful Admission of Evidence.—When Harmless.*— In an action by tenants of the first floor of a building against the owner thereof and a heating company for their alleged negligence in turning off the hot-water heat in the second floor, producing conditions whereby plaintiffs' goods were damaged, evidence of the understanding of the owner's servant as to why such owner referred the servant to the heating company for instructions in turning off such heat instead of having such servant do it, is improper; but where the evidence given was but a restatement of what had been given before at the instance of both parties its admission was harmless. p. 332.

10. APPEAL.—*Weighing Evidence.—Principal and Agent.*—Where there is some evidence tending to show agency, a verdict founded thereon will not be disturbed on appeal. pp. 333, 337.

11. NEGLIGENCE.—*Joint Tort Feasors.—Verdict.—Favorable to One and Against the Other.—Interrogatories.*—Where joint tort feasors are sued and there is a general verdict against one thereof, and in favor of the other, but answers to the interrogatories show that both were liable, the court should render judgment on the answers to the interrogatories against the other, the

amount assessed in the verdict against the one governing as to both.   p. 335.

12.   APPEAL.—*Verdict.*—*Interrogatories.*—Answers to the interrogatories to the jury control the general verdict only when they are in irreconcilable conflict therewith upon any supposable evidence within the issues; and in determining such question the court will consider only the pleadings, the interrogatories and the general verdict.   p. 336.

13.   BILLS OF EXCEPTIONS.—*Use of.*—*Cross-Appeals.*—Where appellant duly filed a proper bill of exceptions containing the evidence, and after notice to appellant, and its consent thereto, the cross-appellants secured from the court on appeal the right to assign cross-errors on the transcript of the original appellant, such action obviated the need for the filing of another transcript or bill of exceptions.   p. 336.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by William F. Lenhart and another against the Peru Heating Company and another.   From a judgment for plaintiffs, said company appeals.   *Affirmed.*

*Antrim & McClintic* and *Robert J. Loveland,* for appellant.

*Walter C. Bailey, Henry S. Bailey, Charles A. Cole, Albert H. Cole, Shively & Switzer* and *Cox & Andrews,* for appellees.

HOTTEL, J.—This is an action by appellees Lenhart and Simpson against appellant company and appellee Charles H. Brownell to recover damages for injuries to a stock of undertaking goods, alleged to have been caused by the negligence of said appellant company and Brownell.

The amended complaint was in one paragraph, to which a demurrer filed by each defendant was overruled and exception taken.   The cause was put at issue by a general denial filed by each defendant, and was tried by a jury, which returned a general verdict in favor of defendant Brownell and against the Peru Heating Company, assessing damages in favor of Lenhart and Simpson in the sum of $1,094.40, with answers to interrogatories.   Appellant moved for judgment on the answers to interrogatories, and then for new

trial. The motions were overruled and exceptions saved. Appellees Lenhart and Simpson also filed separate motions for judgment in their favor on the answers to interrogatories, as against defendant Brownell, and a motion for judgment on the general verdict against defendant heating company, and then filed a motion for a new trial against defendant Brownell, who also filed a motion for judgment in his favor on the general verdict. The motions of Lenhart and Simpson for judgment on the answers to interrogatories, and for a new trial as against Brownell, were by the court overruled, with exceptions in their favor, and the court then sustained the motions of Lenhart and Simpson and of Brownell for judgment on the general verdict, and rendered judgment for appellees Lenhart and Simpson in the sum of $1,094.40 against appellant and in favor of appellee Brownell, from which judgment appellant and appellees Lenhart and Simpson each prayed an appeal.

The following errors are relied on by appellant: (1) The overruling of its demurrer to the amended complaint. (2) The overruling of its motion for judgment in its favor on the answers to interrogatories. (3) The overruling of its motion for a new trial.

That part of the complaint necessary to a full understanding of the case and the questions presented for decision, is substantially as follows: Appellee Brownell was the owner of a three-story brick building in Peru, Indiana. Plaintiffs Lenhart and Simpson on and prior to February 8, 1905, were partners in the retail furniture and undertaking business in Peru, and occupied ground-floor rooms in said building, which they held "under a lease from said Brownell," the owner. Defendant Peru Heating Company owned and operated a central hot-water heating plant in the city of Peru, and furnished heat to consumers in said city, by its system of pipes extending from its central plant to the various business houses and dwellings. One of the rooms so occupied by said plaintiffs was at the time filled with

undertaking goods. Immediately above this room was a suite of office rooms, not at any time occupied, leased, used or controlled by said plaintiffs. In 1903, defendant heating company, under a contract with Brownell, installed in said building, except in the rooms so used by said plaintiffs, a system of pipes and radiators, by which the various rooms, except those occupied by said plaintiffs, were heated. The heat was brought into the basement by an inflow pipe, and the return circuit was by an outflow main, also in the basement. The radiators in said office rooms above the rooms of said plaintiffs were connected with the pipes and mains in the basement. During the fall of 1903, defendants caused the hot water to be turned into the building, including said office rooms so located immediately above plaintiffs' said undertaking establishment, and excepting the rooms so occupied by said plaintiffs. Thereafter said heating company furnished to the various tenants of said business block such heat for hire. A short time prior to February 8, 1905, defendants were notified by the new occupants of said office rooms "to turn the heat out" of such rooms. At or about the time of such change, and some time prior to February 8, 1905, in pursuance to such notice, defendants undertook to cut off the hot water from said office rooms, and to remove the heat therefrom. In so attempting to shut off the heat from said office rooms, and the flow of water through the pipes and radiators therein, defendants carelessly and negligently shut off the entire circulation of water in said rooms through said pipes, and carelessly neglected to drain the water from said pipes in said rooms, thereby creating a "dead end" in said pipe, in which water collected, and could not pass out, and the water so collected in said pipes was negligently and carelessly allowed by said defendants so to remain at the time and season of the year when, as the defendants well knew, the water therein was liable to freeze and burst said pipes, and no means were provided to prevent the freezing and bursting of said pipes.

About February 8, 1905, the water so standing in said pipes froze, and the pipes burst at or near the valve where the water was negligently and carelessly cut off. By reason of the freezing of the water and the bursting of said pipes, a large quantity of water was forced therefrom, and was precipitated into the room so used by plaintiffs for their undertaking business.

Defendants are sued as joint tort feasors, and the law applicable thereto is stated in the case of *Consolidated Ice Mach. Co.* v. *Keifer* (1890), 134 Ill. 481, 25 N. E. 799, 23 Am. St. 688, 10 L. R. A. 696, in the following language: "And so, if several persons are jointly bound to perform a duty, they are jointly and severally liable for omitting to perform or for performing it negligently. All persons who coöperate in an act directly causing injury are jointly liable for its consequences, if they acted in concert, or united in causing a single injury, even though acting independently of each other." See, also, *Chicago, etc., R. Co.* v. *Marshall* (1906), 38 Ind. App. 217; *Baltes* v. *Bass, etc., Mach. Works* (1891), 129 Ind. 185, 188; *Ashcraft* v. *Knoblock* (1896), 146 Ind. 169; *Doherty* v. *Holliday* (1894), 137 Ind. 282; Deering, Negligence §395; Wharton, Negligence (2d ed.) §788.

Appellant bases its objection to the complaint practically on the same grounds that it urges in support of its motion for judgment on the answers to interrogatories, and against the sufficiency of the evidence, and we shall consider these objections more in detail than we otherwise would. The objection to the complaint is that it "does not disclose such a relation between appellees Lenhart and Simpson and appellant, that the latter will be answerable in damages to the former for the injuries complained of." As reasons for this contention, appellant urges that the complaint shows that appellee Brownell owned the building, in which the goods of Lenhart and Simpson were damaged, and the water-pipes and fixtures therein; that appellant's

service-pipes extended to said building, and there stopped; that Brownell had exclusive ownership and control of the wáter-pipes in said building; that the service of appellant never extended to the rooms occupied by appellees Lenhart and Simpson; that no contractual relation existed between them and appellant; that appellant's relations to Brownell's tenants never went beyond those of the merest licensee, extending only to such portions of the building and pipes therein as were, at the time of the injury complained of, being used by the renters of such building for heating purposes; that appellant's right to use, or have anything to do with said pipes in the rooms where the bursting complained of occurred, terminated some time prior to February 8, 1905, when such bursting occurred, viz., when appellant shut off the entire circulation of water in said rooms through said pipe, and that, therefore, appellant, at the time of the injury to said appellees' property, owed them no duty in connection therewith, for the violation of which it could be held accountable for damages for injury resulting therefrom.

Appellant's contention as to the facts disclosed by the complaint is practically correct, as far as it undertakes to state such facts; but it is in error in the conclusion 2. deduced therefrom—that it, at the time of the injury, owed appellees no duty, for the violation of which it could be held accountable in damages. It is not necessary that a contractual relation exist between the wrongdoer and the party injured by the wrong, in order that such party may have redress for the injury and damage resulting from the wrong done. *Stock* v. *City of Boston* (1889), 149 Mass. 410, 21 N. E. 871, 14 Am. St. 430; *Reagan* v. *Boston Electric Light Co.* (1897), 167 Mass. 406, 45 N. E. 743; *Ennis* v. *Gray* (1895), 87 Hun (N. Y.) 355, 34 N. Y. Supp. 379; *Murphy* v. *City of Indianapolis* (1902), 158 Ind. 238; *Heaven* v. *Pender* (1883), 11 Q. B. D. 503.

In 28 Am. and Eng. Ency. Law (2d ed) 253, ''tort'' is

defined as follows: "The word 'tort' means nearly the same thing as the expression 'civil wrong.' It denotes an injury inflicted otherwise than by a mere breach of contract; or, to be more nicely accurate, a tort is one's disturbance of another in rights which the law has created, either in the absence of contract or in consequence of a relation which a contract had established between the parties."

To this definition in Bishop, Non-contract Law §4, is added the following qualification: "Of course the wrong must be of a sort which the law redresses, not a mere infraction of good morals."

The oft quoted legal maxim, *"sic utere tuo ut alienum non laedas,"* is here applicable. In 21 Am. and Eng. Ency. Law (2d ed.) 470, this maxim finds expression in the following language taken from the leading case of *Heaven* v. *Pender, supra,* which is particularly applicable to this case: "Whenever one person is placed in such a position with regard to another that it is obvious that if the former does not use ordinary care and skill in his own conduct he will cause danger of injury to the person or property of the latter, a duty arises to use ordinary care and skill to avoid such danger."

Even if it be conceded that appellant was, under the allegations of the complaint, a mere licensee in the building owned by Brownell, the privilege which it enjoyed

3.  with reference to said building was that of being permitted by Brownell to furnish hot-water heat through his (Brownell's) water-pipes and fixtures in said building, under a contract for hire, made between appellant and the occupants of said building. Under these allegations, appellant owned and controlled the hot-water supply, and through it, and not through Brownell, the occupants of Brownell's building obtained such heat, if they desired it. Brownell's tenants, who used the heat, contracted with appellant, and not with Brownell, and Brownell had nothing to do with it, except to permit the pipes and radiators in his building to

be used as the medium through which the heat was furnished, and whether or not the heat was furnished by appellant, and accepted by the tenants, depended wholly on their own arrangement. Under such conditions, it became the duty of appellant, when arrangement was made therefor by any tenant, to turn the heat into the particular room or rooms for which the arrangement was made; and likewise, when a tenant desired the heat turned off, it became appellant's duty to turn it off, and it was not only its duty, but, when the payment for the heat stopped, it was to its interest to have the heat turned off.

It would seem unreasonable to hold that the wrongdoer, under such circumstances, might shield himself, because of his license, from liability for the wrong done. We know that there is a line of cases holding that the mere licensee does not, in the absence of contract to that effect, assume the duties of the licensor, in looking after and keeping up the repairs of the property in connection with which the license is granted, and, therefore, is not liable for injury for a violation of such duties. The foregoing cases, cited and relied upon by appellant, are easily distinguishable from cases like the one presented in this complaint. We have been unable to find any case where the wrongdoer, even though a licensee, so circumstanced and situated with reference to the party injured by his wrong, as was appellant under the facts here pleaded, has been able, by his license, to shield himself from liability to the injured party resulting from his (the licensee's) negligent acts in connection with his own business in the use of the property covered by his license.

We think that it would hardly be contended that if appellant, in turning on the heat to supply the tenants, should, by its carelessness and negligence in such act, permit the escape of the water, to the injury and damage of rightful and legal occupants of the building, it would not be liable therefor.

For the same reason, appellant would be liable in damage for any injury resulting to such occupants from its carelessness and negligence in shutting off the heat. That this is true, we think is supported by numerous cases of other states, as well as by those of our own State. *Citizens Gas, etc., Co.* v. *Whipple* (1904), 32 Ind. App. 203; *Huntington Light, etc., Co.* v. *Beaver* (1905), 37 Ind. App. 4; *Schmeer* v. *Gaslight Co.* (1895), 147 N. Y. 529, 42 N. E. 202, 30 L. R. A. 653; *McGahan* v. *Indianapolis Nat. Gas Co.* (1895), 140 Ind. 335, 29 L. R. A. 355, 49 Am. St. 199.

4. Appellant had in its possession and was selling to the public, an agency that was very dangerous unless properly regulated and controlled, and it owed not only to its patrons in the buildings where it supplied said agency, but to all legal and rightful occupants of such buildings, the duty of using care commensurate with the danger to which it exposed the persons or property of the occupants of such buildings so supplied with such agency. *Ennis* v. *Gray, supra; Clements* v. *Louisiana Electric Light Co.* (1892), 44 La. Ann. 692, 11 South. 51, 32 Am. St. 348, 16 L. R. A. 43; *Giraudi* v. *Electric Improvement Co.* (1895), 107 Cal. 120, 40 Pac. 108, 48 Am. St. 114, 28 L. R. A. 596; *Griffin* v. *United Electric Light Co.* (1895), 164 Mass. 492, 41 N. E. 675, 49 Am. St. 477, 32 L. R. A. 400; *Hebert* v. *Lake Charles Ice, etc., Co.* (1904), 111 La. 522, 35 South. 731, 100 Am. St. 505, 64 L. R. A. 101.

3. Counsel for appellant insist that the complaint affirmatively shows that the cutting off of the heat was not the proximate cause of the injury. We cannot agree with this contention. Under the authorities cited, it became appellant's duty, when, in connection with Brownell, it undertook to shut off the heat, to take all reasonable and proper precautions to provide against the then present and known consequences that might result from such act, as well as against such consequences as might reasonably be anticipated to follow therefrom.

In the case of *Derry* v. *Flintner* (1875), 118 Mass. 131, it is said: ''One who commits a tortious act is liable for any injury which is the natural and probable consequence of his misconduct. He is liable not only for those injuries which are caused directly and immediately by his act, but also for such consequential injuries as, according to the common experience of men, are likely to result from his act. And he is not exonerated from liability by the fact that intervening events or agencies contribute to the injury. The true inquiry is whether the injury sustained was such as, according to common experience and the usual course of events, might reasonably be anticipated.''

The proximate cause is ascertained by determining the responsible cause, without regard to its time or place in the succession of events that resulted in the injury. *Lake Erie, etc., R. Co.* v. *Charman* (1903), 161 Ind. 95, and authorities cited; *White Sewing Mach. Co.* v. *Richter* (1891), 2 Ind. App. 331; *Harriman* v. *Pittsburgh, etc., R. Co.* (1887), 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. 507.

5.

If the original wrongful act or omission supplied the condition by which the subsequent act was rendered hurtful, he who committed that act is responsible. *Walters* v. *Denver, etc., Light Co.* (1898), 12 Colo. App. 145, 54 Pac. 960; *Skinn* v. *Reutter* (1903), 135 Mich. 57, 97 N. W. 152, 63 L. R. A. 743, 100 Am. St. 384.

6.

In turning off said hot-water heat, appellant was chargeable with knowledge of the character of the climate in which it was operating said business, and of the injurious results that might follow the creating of a ''dead end'' in said pipes filled with water; it knew that on account thereof the water in said pipes was liable to freeze and burst said pipes when freezing weather came, and that in such case damage would, in all probability, result to the occupants of said building.

7.

We think it clear that, under the authorities cited, the allegations of the complaint show that appellant was so situ-

ated with respect to appellees Lenhart and Simpson
3.   that it owed them the duty of exercising such care in
turning off said hot-water heat that no injury might
result to them from such act; that it violated this duty,
and that damage resulted to appellees Lenhart and Simpson by reason thereof. In such case, appellant is liable
under the law. *Pittsburgh, etc., R. Co.* v. *Lightheiser*
(1904), 163 Ind. 247; *Indianapolis, etc., Transit Co.* v.
*Foreman* (1904), 162 Ind. 85, 102 Am. St. 185; *American
Rolling-Mill Co.* v. *Hullinger* (1904), 161 Ind. 673.

The complaint alleges in positive terms that appellant
and Brownell undertook to shut off the hot-water heat, pursuant to the request of certain tenants, and that they did it
in the negligent manner before set out. Having undertaken
to shut off the heat, under the circumstances and conditions
set out in the complaint, it became their duty to use reasonable care and caution in so doing, with reference to the rights
of others legally and rightfully occupying the building.
*Huntington Light, etc., Co.* v. *Beaver, supra; Conner* v.
*Winton* (1856), 8 Ind. 315, 65 Am. Dec. 761.

Appellant next urges that the court erred in overruling
its motion for judgment on the answers to interrogatories,
and urges practically the same reasons that are urged
8.   against the sufficiency of the complaint, and claims,
also, that the answers to the interrogatories show that
Miller, who turned off the hot-water heat, in the negligent
manner charged, was the agent of Brownell, and not of appellant. What we have said in discussing the complaint on
questions here involved need not be repeated. The interrogatories, important and controlling on the subject of Miller's
agency, affirmatively find the following facts: That some
member, or members, of the firm of Murphy, Redmon &
Hammond, in the summer or fall of 1904, notified appellee
Brownell that they wanted to discontinue the heat in rooms
twelve and thirteen, and requested him to have the water
shut off from said rooms. Charles H. Miller was in the em-

ploy of said Brownell during the summer and fall of 1904,
and Brownell directed Miller to see Homer Thrush, and if
he would tell him how to turn off the water from rooms
twelve and thirteen, and drain the pipes, he (Miller) should
go ahead and do it. Miller, pursuant to said order from
Brownell, saw Thrush, and told him that he would turn off
the water from rooms twelve and thirteen, and drain the
necessary pipes if he would tell him how to do it. Miller
thereupon shut off the water in said rooms, by closing said
gate valves, and drained the water from the radiators and
pipes in said rooms, and permitted said gate valves to re-
main closed. If said gate valves in said rooms had been re-
opened after said radiators had been drained, and the radi-
ator valves closed, there would have been a circulation
through said by-pass which would have prevented the water
in said belt from freezing. Interrogatory number twenty-
four and its answer are as follows: "Did not Thrush tell
Miller first to close the main valves, then close the gate
valves in said rooms, then disconnect the belt from the
main pipes and plug the openings in the main pipes, then
reopen said gate valves and open the air valves in said radi-
ators, and drain the water from said belt? A. No."

It will be observed from the answer to interrogatory num-
ber twenty-four, that the jury made a negative finding upon
the subject of what directions Thrush gave Miller. There
is nothing in the answers that negatives the fact that it was
the duty of appellant to shut off the water, nothing that
negatives Thrush's authority to appoint Miller the agent for
appellant, or that negatives the fact that he did so appoint
him, in fact or by inference, and give him full directions for
turning off the water for appellant, and nothing that nega-
tives the fact that Thrush may have given Miller wrong in-
structions as to the way in which to shut off the water, all
of which facts were provable under the issues. In view of
the well-established rules that this court will assume, as
proved in favor of the general verdict, every material fact

provable under the issues, not expressly negatived by the answers to the interrogatories, and that a judgment will be rendered on such answers against such verdict only when such answers are in irreconcilable conflict with such verdict, we are of the opinion that no error was committed by overruling this motion. *Shoner* v. *Pennsylvania Co.* (1892), 130 Ind. 170; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512; *Louisville, etc., R. Co.* v. *Summers* (1892), 131 Ind. 241; *McCoy* v. *Kokomo R., etc., Co.* (1902), 158 Ind. 662; *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297.

The third error relied on is the overruling of the motion for a new trial, and the first ground of the motion insisted on is an alleged error of the court in overruling the

9. objection of appellant to the following question put by his codefendant Brownell to said plaintiff's witness, Miller, on cross-examination: "What did you understand to be Brownell's purpose in referring you to Thrush to have the heat turned off, instead of turning it off yourself?" Counsel followed up the objection to this question by a motion to strike out the answer thereto, which was also overruled, and exception saved, and this alleged error is assigned as a ground of the motion for new trial. The question was objectionable, and the objection thereto should have been sustained; but the answer was not responsive, being practically a repetition of what the witness had stated, both in his examination-in-chief and on cross-examination, was his understanding of what Brownell had said to him, and for this reason it was harmless.

A number of instructions were given by the court, at the request of each of the appellees, and many of them are objected to by appellant. We have examined all the instructions given, and are of the opinion that they correctly state the law applicable to the case and with fairness to appellant.

Appellant urges that the verdict is not sustained by suf-

ficient evidence, and earnestly insists that the evidence shows that Miller, who turned off the hot-water heat, was the agent of Brownell, and not of appellant, and that, therefore, appellant had nothing to do therewith.

As will later develop in this opinion, there is a double appeal in this case, and we shall set out enough of the evidence on the disputed points to present the question of its sufficiency to sustain the verdict in favor of both the appellees to the original appeal.

Witness Miller testified as follows: "Mr. Brownell informed me * * * that his tenants, Murphy, Redmon & Hammond, did not want the hot water in the rooms * * * vacated by Mr. Kling, and told me to go to Mr. Thrush, and tell him they did not want this heat any longer, and further to state to him that if he would instruct me how to turn off this water, and drain the necessary pipes, that I should go ahead and do it. I went to see Thrush, and said to him, that Mr. Brownell had instructed me to tell him that his tenants, Murphy, Redmon & Hammond did not want this heat in the rooms that they had recently rented, and that he had instructed me to tell him that I could turn the water off and drain the necessary pipes if he would instruct me how to do it. * * * He [Thrush] said, turn the valves off in the basement on this branch to turn the water off. * * * I replied that I did not think there were such valves there. * * * He said, There isn't? Well, there ought to be. Then I told him that there were valves on the second floor in these rooms, near where the risers came through the floor. * * * I roughly drew a sketch indicating the location of these particular valves, and every union in these two rooms. * * * He said to close these two valves and disconnect the union and drain the pipes and radiators. * * * I suggested that he had better step over to the building and show me there. He said he did not think it was necessary, that I could have no trouble there, and then I left him."

Witness George Redmon testified that he was in the rooms where the pipes burst, just after the accident, and saw Miller and Thrush there, and heard a conversation between them. Thrush accused Miller of shutting off the wrong valve, and Miller said that he went according to the instructions that he had given him. Thrush said the shutting off of that valve caused the water to freeze, and burst the pipe.

Appellee Lenhart testified as follows: "Mr. Thrush told Miller he had shut off the wrong valve, and created a 'dead end,' and it froze, and Miller said: 'I did just exactly as you told me.'"

Murphy testified that Thrush said to Miller, that if he had shut off the water at the place where he told him to, it would not have frozen, and Miller replied, in substance, that he had shut it off where he was told to shut it off.

Brownell testified as follows: "A. I sent for Miller. * * * The substance of what I said to him was that Murphy, Redmon & Hammond did not want the hot-water heat in this office any longer, and wanted it cut off. I instructed him to go to the heating company, and arrange to have it done. Q. What, if any, instructions did you give Miller himself to cut off the hot water? A. None. * * * I understand * * * that I had given the hot water people license to go into the building and sell heat to my tenants. * * * The heating company tried to make a contract with me, but I refused to make one. * * * I did not have any contract with the heating company. * * * Q. The heating company had been given the right to sell heat in there? A. I made the contract with them for putting in the plant, and had an understanding with Richard Edwards that they would go in there and sell heat to my tenants. Edwards tried to get me to make a contract by which I would assume the heating of the building for all my tenants, but I refused to do that, and told him they could go in there and sell heat to my tenants and collect for it." (Edwards was the president of the heating company.)

Thrush, superintendent of the heating company, testified that the former occupant of rooms twelve and thirteen of the Brownell building had paid him heat rent, and that on January 18, 1904, he collected from Murphy, Redmon & Hammond, the heat rent up to the close of the heating season of 1903 and 1904, and at that time said renters notified him that they would not want the heat after the close of that season; that he understood he was under obligation to turn off the heat when ordered by the tenant to do so; that if a tenant informed him he did not want the heat, it was his duty to have it turned off, and to see that it was done properly.

There were over seven hundred pages of evidence, but we think we have indicated enough of it upon the disputed matters to show that there was some evidence tending to support the verdict against appellant, which, under the rules of this court, is enough to prevent the granting of a new trial on account of the insufficiency thereof.

We find no error in the record against appellant. There is, however, another side to this appeal. After appellant filed its transcript and perfected its appeal herein, appellees Lenhart and Simpson filed petition for leave to assign errors on appellant's transcript, which was granted by this court.

The errors assigned and relied on by said appellees call in question the rulings of the court on their motions for judgment against Brownell on the answers to interrogatories, and for a new trial as against Brownell.

As to the first motion, counsel for Brownell insist that there could have been no judgment against him on the answers to the interrogatories, for the reason that there was no finding by these answers as to any amount of damage sustained by said appellees, and, as supporting this contention, cite the case of *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642.

The case cited is entirely different from this one, and not

in point on the question here presented. In the case cited there was but one defendant, and a general verdict against the plaintiff with answers to interrogatories, none of which found any amount of damages, and the court in that case properly held that there were no "facts found from which the court could, as a matter of law, make such assessment."

In this case, the theory of the complaint is that both defendants are joint tort feasors. Under this theory of the complaint, and the proof as well, if either or both defendants were liable at all they were liable for the entire damages suffered by plaintiffs Lenhart and Simpson. *Baltes* v. *Bass, etc., Mach. Works* (1891), 129 Ind. 185, 188; *Ashcraft* v. *Knoblock* (1896), 146 Ind. 169; *Doherty* v. *Holliday* (1893), 137 Ind. 282; *Boor* v. *Lowrey* (1885), 103 Ind. 468, 476, 53 Am. Rep. 519; *Everroad* v. *Gabbert* (1882), 83 Ind. 489.

There was in this case a general verdict against one of the defendants, which fixed the amount of the recovery.

In determining a motion for judgment on the answers to interrogatories, it is the duty of the court to consider, in connection therewith, the general verdict and the pleadings. In this case the jury, by its general verdict, found facts from which "the court can, as a matter of law, make such assessment."

We have found a more difficult question in the disposition of this motion upon its merits; but a careful consideration leads us to the conclusion that, under the general denial to the complaint, appellee Brownell might have made proof of other facts not negatived by these answers, which would have relieved him from liability, and that the motion was, therefore, properly overruled.

Lastly, it is urged by Lenhart and Simpson that the verdict in favor of Brownell was not sustained by sufficient evidence. Brownell insists that, for the purposes of the appeal of Lenhart and Simpson, the evidence is not in the record; that the bill of exceptions filed in

the court below, and made a part of the record of this appeal, was not filed by Lenhart and Simpson, and was not filed within the time given them to file such bill of exceptions, and, therefore, should not be considered in determining any question on the evidence raised by their appeal. The facts with reference to the filing of the bill of exceptions are as Brownell claims; but there is a general bill of exceptions containing the evidence that was filed by appellant within the time given it to file such bill, and this bill may be considered in determining any question in relation thereto properly presented by either the original appellant or these appellants. After notice to, and with the consent of, appellant heating company, these appellants were by this court permitted to assign error on the transcript of the original appellant. This obviated the necessity for their filing a separate transcript, and also the necessity for a second bill of exceptions. To hold that in such cases a second bill of exceptions should be filed would add unnecessarily to the record and augment the costs of appeal, with no resulting benefit to any one. This view of this question can do no injustice to any of the parties to an appeal, and enables the court finally to adjudicate the whole controversy without a multiplicity of transcripts and bills of exceptions, with the additional costs thereby occasioned.

We have been cited to no decision of this court or the Supreme Court decisive of this exact question, but we are strongly supported in our holding by the cases of *Feder* v. *Field* (1888), 117 Ind. 386, and *Merritt* v. *Richey* (1891), 127 Ind. 400, 402.

The sufficiency of the evidence to sustain the verdict in favor of Brownell presents the most difficult question raised by this appeal. In support of their respective contentions as to the sufficiency of the evidence, Brownell and the heating company are both insisting on the application of the same rule of law, and each hopes thereby

to shift the liability. The heating company contends that the proof shows that their superintendent—Thrush—in giving directions to Miller as to how to shut off the water, "was acting in the service of Brownell; and Brownell is insisting that his employe Miller was loaned to the heating company to shut off the water, under the instructions and directions of its general superintendent Thrush." In determining this question, the law requires this court to look only to the evidence that tends to support the verdict, and to indulge all legitimate inferences that may be drawn therefrom in favor of such verdict. This being the rule by which this court is bound, we are led to inquire what facts and legitimate inferences most favorable to Brownell can be drawn from the evidence in this case.

From the evidence heretofore quoted, we think the jury may have properly found that the duty of shutting off the water from rooms twelve and thirteen rested upon the heating company and not upon Brownell; that the heating company accepted Miller as their agent, authorized him to shut off said water, and gave him directions how to do the work, which directions were wrong, and resulted in shutting off the water in the negligent manner charged in the complaint.

There being some evidence which tended to prove such facts and inferences, we are, under the rules governing this court, constrained to hold that as to Brownell the verdict of the jury was sustained by sufficient evidence. We find no error in the record.

Judgment affirmed.