KORSCHOT, D/B/A JESS L. KORSCHOT & SON *v.*
LEEVY, ADMINISTRATRIX ET AL.

[No. 19,279. Filed December 18, 1961. Rehearing denied January 25, 1962. Transfer denied April 12, 1962. Rehearing dismissed November 22, 1963.]

412

*John F. Bodle, Russell H. Hart* and *Stuart, Branigin, Ricks & Schilling,* of counsel, all of Lafayette, for appellant.

*Harry P. Schultz* and *William C. Burns,* of Lafayette, for appellees.

PFAFF, J.—Appellees brought this action against appellant for the destruction of their house by fire alleging that appellant negligently permitted an oil furnace, which he had installed, to set fire to the residence.

The issues formed by appellees' complaint and appellant's answer were as follows: (1) Appellees alleged, and appellant denied, that on December 23, 1951, one Lennox FQ1-120 Oil Fired Forced Air Furnace, which had been installed by appellant, was under the sole management and control of appellant and that it was appellant's duty to keep said oil burner in a reasonably safe condition so as not to set fire to appellees' property; (2) that appellees alleged, and appellant denied, that appellant negligently permitted the oil furnace to set fire to appellees' residence; (3) that appellees alleged, and appellant denied, that the residence was totally destroyed while appellees were in the exercise of due care, and appellees were damaged in the amount of $37,000.00.

The case was tried to the court and, upon proper

request, the court entered its special findings of fact, conclusions of law and judgment against appellant in the amount of $37,000.00. The court sustained appellant's request for relief under Rule 1-8 of the Supreme Court, set aside the original findings, conclusions and judgment and reopened the case for the purpose of hearing additional evidence. Thereafter, the court entered new findings of fact and conclusions of law and entered judgment in favor of appellees and against appellant in the amount of $37,000.00. Appellant filed his motion for a new trial which was subsequently overruled.

The errors assigned are as follows:

"1. The trial court erred in overruling appellant's motion for a new trial, which motion was filed on June 27, 1958. (The original findings, conclusions and judgment in this cause having been entered February 4, 1958, a motion for new trial was first filed on March 4, 1958, after which the Court set aside the original findings, conclusions and judgment, and reopened the cause for the hearing of further evidence on May 9, 1958, and after hearing additional evidence on June 2, 1958, the trial court entered findings, conclusions, and judgment on June 12, 1958. The appellant's motion for new trial was overruled by the trial court on September 26, 1958).

"2. The Court erred in overruling the Written Application of Defendant John Korschot, Doing Business in the Name and Style of Jess L. Korschot & Son for Withdrawal of Issue of Law from Special Judge and for Appointment of Special Judge to Take Jurisdiction Thereof Under Supreme Court Rule 1-13.

"3. The Court erred in overruling Defendant's Motion to Reconsider Court's Ruling on Written Application of Defendant for Withdrawal of Issue of Law from Special Judge and for Appointment of Special Judge to Take Jurisdiction Thereof under Supreme Court Rule 1-13."

The specifications of the motion for a new trial are: That the finding of the court is not sustained by sufficient evidence; that the decision is contrary to law; that the finding of the court is contrary to law; that the court erred in its conclusion of law numbered one; error in the assessment of the amount of recovery in that the amount is too large; and numerous objections in reference to the admission of evidence, etc., which required 34 printed pages of appellant's brief. Those pertinent to a determination of the question presented here will be hereafter discussed in this opinion.

Appellant then filed the following motion:

"The defendant John Korschot, doing business in the name and style of Jess L. Korschot & Son, respectfully shows the Court that heretofore, on June 27, 1958, said defendant filed its motion for new trial, which motion was submitted to the Court for decision on June 27, 1958, and taken under advisement at the time. The defendant's motion for a new trial has been held under advisement by the Special Judge in this cause for more than ninety (90) days. Said defendant respectfully requests that the submission of said motion for a new trial be withdrawn, that said Special Judge be disqualified to hear or determine any of the issues in said cause and that a Special Judge be appointed to take jurisdiction thereof in accordance with Rule 1-13 of the Rules of the Supreme Court of Indiana."

The order book entry showing the overruling of that motion is as follows:

"Now the Court having examined said application and being advised in the premises finds that the defendant's motion for a new trial in this cause was filed on June 27, 1958, and taken under advisement by the Court.

"The court further finds that on September 24, 1958, and before ninety days had elapsed from

the filing of the defendant's motion for a new trial, counsel for the plaintiff and defendant were personally informed by the Court that a decision had been reached respecting the defendant's motion for a new trial and as a matter of courtesy and convenience, said counsel were advised that the Court would on September 26, 1958, enter an order respecting a decision made on the defendant's motion for a new trial; that no objection was made or suggested to the Judge that 90 days would have elapsed on September 26, 1958, and that said date would be the 91st day.

"The Court further finds that relying upon agreement by counsel for plaintiff and defendant to meet with the Court on September 26, 1958, the Judge has appeared for finding and judgment on defendant's motion for a new trial and upon being presented by defendant's written application and petition to withdraw the submission of the issues raised by said motion for a new trial purportedly under Supreme Court Rule 1-13 of the Indiana Supreme Court, the Court finds that at the very least the tendered application violates the spirit of said rule and should be overruled.

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED BY THE COURT: That the defendant's written application and petition to withdraw the submission of issues raised by the motion for a new trial filed by the defendant and petition to disqualify the Judge to hear and determine any of the issues of said motion, and for the appointment of a Special Judge to take jurisdiction, be and the same is hereby overruled and denied, to which ruling of the Court the defendant excepts."

Subsequently appellant filed what he denominated a motion to reconsider the court's ruling on written application for withdrawal of issues of law from Special Judge and to appoint a new special judge. Said motion reads as follows:

"The defendant John Korschot, doing business in the name and style of Jess L. Korschot & Son,

respectfully shows the Court that heretofore, on September 26, 1958, said defendant filed his written application for withdrawal of issue of law from Special Judge W. Douglas Elwood and for appointment of Special Judge to take jurisdiction thereof under Supreme Court Rule 1-13. Said written application set forth the fact that on June 27, 1958, said defendant filed his Motion for a New Trial in this cause, which motion was submitted to the Court and taken under advisement on June 27, 1958. The defendant's Motion for a New Trial had been held under advisement by said Special Judge for ninety-one (91) days at the time said written application was filed with the Clerk and brought to the attention of said Special Judge.

"By order dated September 26, 1958, the Court overruled said defendant's written application and set forth its reasons in said order.

"On September 24, 1958, the attorneys for said defendant were informed by telephone by Special Judge Elwood's secretary that said Special Judge would meet with counsel at 3:00 p.m. on September 26, 1958, in the Tippecanoe Circuit Court. At no time did counsel for the defendant agree with or request the Special Judge or counsel for the plaintiff to extend the time in which a decision on said motion for a new trial could be rendered, nor did counsel for the defendant suggest any such extension. The affidavit of John F. Bodle, attorney for defendant, setting forth the details of said conversation with said Special Judge's secretary, is attached hereto, made a part hereof, and marked Exhibit A.

"WHEREOF, defendant John Korschot, doing business in the name and style of Jess L. Korschot & Son, respectfully requests the Court to reconsider its order of September 26, 1958, overruling said defendant's written application and to expunge said order made on September 26, 1958, from the record and to sustain defendant's written application."

Exhibit A, attached to and made a part of said Motion to Reconsider, omitting caption, title and signature, reads as follows:

"John F. Bodle, being first duly sworn, on his oath says that he is one of the attorneys for John Korschot, d/b/a Jess L. Korschot & Son, defendant in the above-entitled cause, and that the matters and things stated herein are true and correct to his personal knowledge; that on Wednesday, September 24, 1958, during the morning, he received a phone call purporting to be from the secretary of the Hon. Douglas Elwood, Special Judge in this cause, and was advised by said secretary that Judge Elwood would be in the Tippecanoe Circuit Court at 3:00 o'clock p.m. on Friday, September 26, 1958, to enter an order in the above cause; that affiant advised the caller that he would not be in Lafayette on that day, but that someone from the law firm in which he is a partner would be in the Tippecanoe Circuit Court on that date, at that hour;

"That said secretary or caller did not state or announce for said Judge any decision on any issue of law then pending before said Judge for decision in this cause, and that no announcement of any such decision of the Judge on any such issue was ever made at any time or in any way, prior to 3:00 o'clock p.m. on Friday, September 26, 1958, at which time affiant is informed Judge Elwood announced his decision of the issues of law involved in defendant's motion for a new trial in this cause;

"That neither affiant nor any other attorney for the defendant herein, nor the defendant himself ever in any way requested of, or suggested to Judge Elwood or any of the plaintiffs herein, or any of the attorneys for plaintiffs, any extension of the ninety-day period provided by Rule 1-13 of the Supreme Court of Indiana, within which period said Judge was requested to rule on issues of law pending before him on defendant's motion for a new trial in this cause, nor did affiant, nor did any other attorney for the defendant, nor did the defendant himself, ever in any way make any agreement with, or have any conversation, correspondence, or any other contact whatsoever with, Judge Elwood, any of the plaintiffs herein, or any of the attorneys for the plaintiffs, concerning any such extension."

This motion was overruled.

Appellant's principal contention is that the evidence was insufficient to support the findings and decision of the trial court.

To support the foregoing conclusions he states that the court erred: In overruling appellant's objection to a hypothetical question propounded by appellees' attorney to appellees' witness William Todd Miller, calling for the opinion of the witness as to where the fire originated; in overruling appellant's motion for permission to ask preliminary questions before said hypothetical question was answered; in overruling appellant's further objection to said question; in admitting the answer of the witness to said question; and in overruling the motion of the appellant to strike the answer. He further states: That the court erred in overruling appellant's objections to a hypothetical question propounded by appellees' attorney to the same witness (Miller), calling for the opinion of the witness as to the cause of the fire; that the court erred in admitting the answer of the witness, and in overruling appellant's motion to strike the answer; that the court erred in overruling appellant's motion to strike the last sentence of an answer given by the same witness to a question propounded by appellees involving his opinion as to the existence of certain conditions at the time of the fire; and that the court erred in overruling appellant's motion to strike the testimony of the same witness and to strike his answer to a particular question propounded by appellees involving factors taken into consideration or assumed by the witness in forming his opinions as to the location and cause of the fire.

Appellant has grouped the foregoing specifications together in the argument portion of his brief pursuant to Rule 2-17 (e). In connection with all these points, ap-

pellant contends that the testimony of the witness Miller was inadmissible and entitled to no probative value whatever.

At this point it might be well to consider the qualifications of Professor William Todd Miller who testified as follows:

"I live in West Lafayette and am professor of mechanical engineering at Purdue University. I attended Washington University at St. Louis for two years and graduated in June, 1916 from Purdue, with a degree of Bachelor of Science in Mechanical Engineering, majoring in mechanical engineering, heating and ventilating. I was employed in the Oklahoma Indian Territory and designed and supervised the construction of three power plants. I was later employed by Lafayette Box Board and Paper Company to improve their steam production and became superintendent of the mill. I was employed by Ft. Wayne Corrigated Paper Company as a plant engineer from 1925 to June, 1928, and was responsible for rebuilding their power plant. During this period I developed a consulting clientele. I associated with Purdue University in October, 1928, and became assistant professor on January 15, 1930, in the mechanical engineering department, heating and ventilating field. I became a full professor in 1934-1935 and that is my present rank. I am head of the heating and ventilating department of the mechanical engineering school. I have written a textbook on heating and ventilating, which was first published in 1934, and used at Purdue University until last fall. Until this fall I have been a member of the Indiana State Administrative Building Council, having been on that board since 1936. It is responsible for construction, publication, promulgation of building codes, sanitary codes, health codes, electrical codes, refrigeration codes and heating and ventilating codes. I was Chairman of the Heating, Ventilating and Air Conditioning Committee of this Council and responsible for writing various parts of the heating, ventilating and air conditioning code, which is applicable only to public buildings."

Professor Miller testified he visited the house about two weeks after the fire with his assistant. He did not go at the Leevy's request. He was interested in the problems of combustion and fires in residences and first looked for a fresh air intake, and there was none apparent. It was evident there had been a fire and that the only visible opening from the furnace room was a door which had been burned away. There was a steel sash window in the basement wall opening into the furnace room. It was tightly closed and well fitting. The barometric damper was not in place. The upper portions of the walls of the furnace room were smoked and black about four feet below the ceiling line.

About two weeks before the trial he went back to the house and examined the furnace itself. He described how the furnace was constructed and operated. At this point he was asked the following hypothetical question:

"Q. Now, Professor Miller, in addition to the things that you observed there on your two trips, I will ask you to assume these additional facts: that after the furnace was installed and while the furnace was in operation large quantities of black smoke was seen coming from the top of the chimney at various times, that at various times while the furnace was in operation it pulsated or vibrated with such force that it was audible on the first floor of the house and caused the doors to rattle. That on at least three occasions the barometric damper of the furnace was found on the floor of the furnace room. That on one occasion a workman working in the building heard an explosion and went into the furnace room and found the barometric damper on the floor of the furnace room. That the ceiling of the furnace room was lined with a fire-resistant material. That the walls of the furnace room were constructed of cement blocks. That there was a window in the furnace room, a steel sash and glass window, and that on the night of December 22nd that window was closed. That there were two doorways to the fur-

nace room, one leading to the oil tank-room and one leading out into the basement and that the doors of the furnace room were closed about four, somewhere between four and five o'clock on the evening of the 22nd day of December, and remained closed. That there was no fresh air duct into the furnace room, that there was no air vent on the oil tanks, that the house was destroyed by fire somewhere between one and one-thirty and four o'clock on the morning of December 23rd. Now, Professor, from your observations and assuming that the facts which I have stated to you are true, I will ask you whether or not you have an opinion as to where the fire that destroyed the Leevy house originated? You can answer that yes or no."

Appellant's counsel made the following objection to the question:

"Mr. Bodle: We will object to that question and any further testimony based on this hypothetical question for the following reason: this is a hypothetical question and assumes facts not based upon evidence introduced in this cause or on any logical inference from evidence introduced in this cause, especially that the window to the furnace room was closed, there is no testimony as to that particular window; there is not testimony there was no vent at all on the oil tanks, I don't think there is any definite evidence as to the number of times the barometric damper was shown to be out of place; for the further reason the question fails to include the facts which are material facts based on the possible origins of fire, factors in no way related to the furnace and as to which the question has made no attempts to include these other facts, such as fire and ashes in the fireplace, the melted down condition of the fuse box after the fire; for the further reason that there are a number of scientific elements necessary to answer this question relating to air infiltration and air available as to which there is no evidence in this record and as to which the question contains no reference. Further that the witness has testified that he was

accompanied by Professor Leevy on the occasion when he was out there. That the opinion sought to be elicited from this witness based on the elements included in this question would not tend to prove or disprove any act of negligence charged in the complaint, which is a very peculiarly drawn complaint in this case, would be incompetent, immaterial and irrelevant, for the further reason the question seeks an opinion of the witness on the ultimate issues and invades the province of the Court as to the facts.

"COURT: Is that it?

"MR. BODLE: That is it.

"COURT: Objection overruled, you may answer.

"MR. BODLE: Before that is done, Judge, may I ask permission to ask preliminary questions of this witness as to whether there are not other factors not included in the question which are necessary to his opinion?

"COURT: I think that would be more proper, Mr. Bodle, on cross examination. I don't believe the rule would permit a preliminary examination on which to base further objections to the hypothetical question, I think that should be reserved for cross examination.

"MR. BODLE: Judge, let me make the further objection that this question asks if this man has an opinion, does not ask that he state the opinion with reasonable scientific certainty, his own testimony has elicited the fact that he paid no attention to any other part of the building, and I think the question and limited observation made by this man necessarily establishes any answer he could give would be pure speculation."

On the overruling of the objection the witness answered:

"A. All those things present as stated. Yes.

"Q. You have an opinion; now the question is, Professor Miller, withdraw that. We got the ob-

jection, we don't want to go over that again. Will you go back and read the previous question after I had finished the hypothetical question then I asked Professor Miller whether he had an opinion. I want that question read to him, then we will follow up with another question.

"REPORTER: (reading) Now, Professor, from your observations and assuming that the facts which I have stated to you are true, I will ask you whether or not you have an opinion as to where the fire that destroyed the Leevy house originated? You can answer that yes or no. Answer: Yes. Question: Where in your opinion did this fire originate?

"A. In the furnace room."

Appellant's motion to strike the answer was overruled. Thereupon, the following questions were asked:

"Q. Now, Professor Miller, from your observations that you made and as you have testified about and assuming that the statements in the hypothetical question are true, I will ask you to state whether or not you have an opinion as to what caused the fire in the Leevy Home, you may answer yes or no?

"A. Yes.

"Q. You may state what in your opinion what was the cause of the fire?

"MR. BODLE: To which question we will interpose an objection upon each of the grounds previously stated as our objection to the previous question; for the further reason this man has testified he went out there with one thought in mind, to look at the furnace, to do nothing else, did not consider any other elements or any other parts of the house, and as he has stated that the house was destroyed when he saw it, he is certainly not able to speak with any opinion based on any scientific possibility as to the cause of the fire.

"COURT: Objection overruled, you may answer.

"A. The combustion of inflammable gases plus unburned oil. I would say the ignition of the inflammable gases plus unburned oil."

Appellant's motion to strike the answer was overruled.

At the hearing of additional evidence, Professor Miller as a witness for appellant, gave in substance the following testimony in reference to his testimony at the trial:

"I am the same William Todd Miller who appeared for the plaintiffs and gave testimony at the earlier trial in this case. I recall testifying previously that I had been at the scene of the fire some week or two after the fire took place and that Mr. Schultz interrogated me about my observations. I also testified that I had been back to the Leevy house shortly before the time I gave my testimony, made an inspection of the furnace, and found the furnace intact. I recall that Mr. Schultz asked me a hypothetical question and that I stated that I had an opinion. I don't recall the wording of the question that he asked me. I recall that I expressed an opinion that the fire started in the furnace room. I recall explaining the basis of my opinion and stated conditions that would cause a fire. Now the basis of that opinion wasn't necessarily based on the question that was asked me. I recall explaining the conditions that would cause a fire, but I don't recall being asked if those conditions prevailed."

After the hypothetical question was read to him, he said:

"My explanation is based upon the assumption that there was no source of air supplied to the furnace. Now there were two doors. I didn't see the two doors and I don't know whether they were tight, had cracks around them or under them, but if those conditions prevailed, then there could and probably would have been a fire.

"I am the same William Todd Miller who gave an affidavit in this cause with relation to a pending motion for a new trial, and which affidavit contains within it an additional assumption of fact. Assuming in addition to the facts, which were given to me in the hypothetical question and which I observed; that the subflooring and flooring joists in the area near the upstairs fireplace in the Leevy house had burned away while the flooring over the furnace room had not burned away, then it would certainly have been my opinion and I would so testify that the fire started in the area in the upstairs fireplace where the flooring burned through first and not in the furnace room or in the furnace and accordingly, that the fire did not start in the manner in which I testified previously that it could have started."

On cross-examination, Professor Miller stated:

"Mr. Korschot has been to see me several times since the trial of this case. Mr. Bodle visited me yesterday and gave me this subpoena. He talked to me about the case. I do a good deal of work with the heating and ventilating engineers."

On re-direct examination he stated:

"I have not been put under any economic pressure from anybody for fear of losing consulting work in order to change my opinion."

It seems to us that the contention of appellant which was the basis of the special findings that the fire originated in the furnace room and that said "fire was caused by the ignition of the inflammable gases plus unburned oil in the furnace and furnace room, which condition was caused by the exhaustion of the oxygen in the furnace room; that such oxygen deficiency was caused by the failure of the defendant to install a fresh air duct leading from the furnace room to the outside of said residence" was based solely on the evidence of Professor Miller.

We cannot agree with this contention because there was other competent evidence by three persons to the effect that, on the day of the fire, appellant admitted to Mr. Leevy that the cause of the fire was his failure to install a fresh air duct and a vent in the pipe. While at the trial, appellant denied having made these statements. This created a conflict in the evidence and it was the duty of the trial court to determine such conflict.

Appellant raises question as to the weight and credibility of the preliminary testimony of Professor Miller and of conflict in that evidence with the evidence of other witnesses. These were matters to be determined by the trial court. There is always a presumption that the trial court performed its duty in weighing and reconciling conflicting evidence. We will not substitute our judgment on such questions for that of the trial court. In *Matthews* v. *Adoniram Grand Lodge, etc.* (1959), 129 Ind. App. 395, 410, 154 N. E. 2d 806, this court stated: "The action of the trial court must be presumed to be correct, and this presumption in favor of the correct action of the trial court is one of the strongest presumptions applicable to consideration of a cause on appeal, and this presumption is particularly applicable in determining questions which affect the weight or sufficiency of the evidence. *N. Y. Central Ry. Co.* v. *Milhiser* (1952), 231 Ind. 180, 106 N. E. 2d 453; *Wisconsin Nat. Life Ins. Co.* v. *Meixel* (1943), 221 Ind. 650, 51 N. E. 2d 78; *Ferrara* v. *Genduso* (1940), 216 Ind. 346, 24 N. E. 2d 692; Flanagan, Wiltrout & Hamilton's Indiana Trial and Appellate Practice, Vol. 2, ch. 56, p. 370, §2790, Comment 1."

Appellant's attack on the testimony of Professor Miller covers more than 15 printed pages of the brief.

He contends that it is based on facts not supported by the evidence, or unfounded assumptions, speculation, etc.

In support of his contentions, among others, he relies on the following cases: He cites *Town of Newburgh* v. *Jones* (1945), 115 Ind. App. 320, 58 N. E. 938, as correctly holding that an opinion based on an assumed material fact of which there is no evidence does not have probative value. To the same effect, he asserts, is the case of *Viant* v. *Town of Lowell* (1947), 117 Ind. App. 354, 72 N. E. 2d 239. The case of *United Toolcraft, Inc. et al.* v. *Sousley* (1958), 128 Ind. App. 181, 147 N. E. 2d 558, cited by appellant, held that the failure to object to a hypothetical question on the grounds that it was not based on facts in the evidence waived any error in its admission. However, the foregoing cases, in our opinion, are not applicable to the question here presented.

We have carefully examined all of the evidence in the record as it applies to the hypothetical question. We do not believe it would serve any good purpose to set out those facts in detail here. Before stating the conclusions we have reached, we believe it would be helpful to state the rules which have guided our decision.

In the case of *Public Utilities Co.* v. *Handorf* (1916), 185 Ind. 254, 263, 112 N. E. 775, the Supreme Court of this State said:

> "It is next insisted that the court erred in permitting appellant to read a certain question and answer thereto contained in the deposition of one Dr. Gilbert for the reason that it assumes as proven facts about which there is no evidence.
>
> "The opinion of an expert, when sought on a hypothetical question, should be based on facts

which the evidence in the case tends to prove. *Elliott* v. *Russell* (1884), 92 Ind. 526; *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409, 3 N. E. 389, 4 N. E. 908. When there is evidence tending to prove a certain fact or facts either by direct proof or by logical inference, a matter which is in the discretion and sound judgment of the trial court, the court may permit the expert witness to give an opinion on the state of facts as shown by the evidence introduced. It is for the jury to determine finally whether the facts as stated in the hypothetical question have been established by a fair preponderance of the evidence in determining what weight will be given to the testimony of such expert witness."

It was also stated in the case of *Taylor* v. *Taylor* (1910), 174 Ind. 670, 678, 93 N. E. 9, that:

"A party may put his hypothetical case as he claims it to be proved, or within reasonable inferences from the evidence, and the jury determines whether it is sufficiently supported by the evidence to be of any value. *Louisville, etc., R. Co.* v. *Wood, supra; Deig* v. *Morehead, supra; Louisville, etc., R. Co.* v. *Falvey, supra; Goodwin* v. *State* (1884), 96 Ind. 550; *Grand Lodge, etc.* v. *Wieting* (1897), 168 Ill. 408, 61 Am. St. 123; *Forsyth* v. *Doolittle* (1877), 120 U. W. 73, 7 Sup. Ct. 408, 30 L. Ed. 586; *Kerr* v. *Lunsford* (1888) 31 W. Va. 659, 8 S. E. 493, 2 L. R. A. 668; *Cowley* v. *People* (1881), 83 N. Y. 464, 38 Am. Rep. 464; *Schissler* v. *State* (1904), 122 Wis. 365, 99 N. W. 593.

"The opinion may be tested by cross-examination, by omissions and additions to the original question, or by an entirely new state of facts; and that was done in this instance. *Bower* v. *Bower, supra; Louisville, etc., R. Co.* v. *Wood, supra; Goodwin* v. *State, supra; Davidson* v. *State* (1893), 135 Ind. 254; *Johnson* v. *Thompson* (1880), 72 Ind. 167."

We believe that the opinion of Professor Miller was

based on facts in evidence, or which may have been reasonably inferred from such evidence, or which he said he observed in his examination of the furnace room. As an expert, his opinion on such facts may be based on factual assumptions which are the result of his scientific knowledge or professional skill. *Jones* v. *Angell* (1884), 95 Ind. 376.

We are of the opinion that the trial court did not err in overruling appellant's objections to the hypothetical question, or any part thereof, or of his various motions to strike parts thereof, or all of the answers to those questions.

The June hearing was held for the purpose of hearing additional evidence on appellant's motion under Rule 1-8 of the Supreme Court. At this hearing, there was evidence from a witness who stated that in the morning of December 23, 1951, (the time of the fire) he saw a glow in the sky and went to the scene. He looked in a window and saw the fire was burning more in front of the fireplace than over the furnace room. Professor Miller was then called as a witness for appellant for the purpose of asking him to assume that the floor in front of the fireplace burned away at a time when the floor over the furnace room was still in place. He answered that based on such new facts, he would say the fire started in the area of the upstairs fireplace and not in the furnace or furnace room. Appellant then asked a question regarding the original hypothetical question which had been re-read at this hearing to refresh the Professor's memory. Appellees objected that such question was not proper at this hearing of new evidence. The trial court properly sustained the objection.

Appellant next contends the evidence was insuffi-

cient to support Special Finding No. 7 to the effect that at the time of the fire the installation of the heating system had not been completed by appellant and the furnace, from the time of its installation up to the time of the fire, was in his control and management and appellees did not have control and management of the furnace. In our opinion there is ample evidence in the record to sustain that finding. Apparently appellant recognizes this, for he then states in his brief as follows:

"We would point out initially that even if this finding were supported by the evidence, the issue of 'control and management' generally becomes of importance only where the decision of a case has been grounded upon the theory of *res ipsa loquitur.* This case was not so grounded, however. Instead, the trial court made an *express determination as to just how and why this fire started*—however erroneous that finding may be. Special findings make it possible to determine whether the trier of facts—here, the trial court—has applied the res ipsa loquitur doctrine, or has found, to its satisfaction at least, that it can determine the exact *cause of and exact reason for* the occurrence in question. The trial court here took the latter course, and did *not* attempt to fix liability on the basis of an 'inference of negligence' under the theory of res ipsa loquitur."

In answer the appellees say:

"While stressing in a subsequent part of its brief that the special findings of the court must contain all the facts necessary to support the conclusions of law, the appellant has here claimed error by the trial court in making a finding not necessary to the conclusion of law. Because of a finding by the court that the fire was caused by 'failure of the defendant to install a fresh air duct leading from the furnace room to the outside' the appellant urges that the sole basis of the conclusion, 'that the law is with the plaintiff' is this one finding.

"It is established in the law that the trial court should find on all material or controlling facts within the issues of a case where there is credible evidence on the subject. *Automobile Underwriters* v. *Tite*, 119 Ind. App. 251, 85 N. E. 2d 365 (1948)."

The complaint alleged appellant had sole management and control of the furnace and this was denied by the answer of appellant. In our opinion there was evidence in the record to sustain this averment of the complaint. However, it does not appear that the question raised on this subject is necessarily material here. We have already indicated our belief that the evidence is amply sufficient to sustain Finding No. 11 (that said fire was caused by the ignition of the inflammable gases plus unburned oil in the furnace and furnace room, which condition was caused by the exhaustion of the oxygen in the furnace room; that such oxygen deficiency was caused by the failure of the defendant to install a fresh air duct leading from the furnace room to the outside of said residence) and therefore sustains the conclusions of law.

Appellant next presents Specifications Five through Ten that the decision and finding of the trial court is contrary to law and that the trial court erred in its conclusions of law. In connection with all these points, appellant presents argument based upon the well established rule that where special findings of fact are requested such findings must contain all the facts necessary to a recovery by the party in whose favor the conclusions of law are found; that on appeal all facts not embraced in the special finding will be regarded as not proved by the party having the burden of the issue; and that the failure to find a fact essential to recovery is equivalent to a finding against the party having the burden of proving same.

He contends the findings do not show any duty owed by appellant to appellee that the court failed to find the appellees were in the exercise of due care, that the findings do not show the source of any flame, or that the oil furnace set fire to appellees' residence.

Appellees in answer assert: "When special findings of fact are made in an action tried by the court without a jury and the court fails to find on some material issue of fact, on appeal from the judgment the reviewing court may either affirm the judgment if it is supported by undisputed evidence, or vacate the judgment and remand the action for findings on the material issues of fact." Rule 2-30, Indiana Supreme Court.

Appellees further contend the record in this case brings it within the rule that where the primary facts found lead to but one conclusion, the court is not required to make a specific finding of the ultimate fact. *Mount* v. *Board, etc.* (1907), 168 Ind. 661, 80 N. E. 629. See also *Kepler* v. *Conkling et al.* (1883), 89 Ind. 392.

Appellant admitted the work on the furnace had not been completed at the time of the fire. Mr. Leevy told appellant about a week before the fire to take the furnace out because of the trouble they had with it since its installation. Appellant said he would get it fixed. He told Mr. Leevy in the presence of others the fire was caused for the reason he had not put in a fresh air duct and no vent in the pipe.

Appellees contend the rule announced in the case of *Peru Heating Co.* v. *Lenhart* (1911), 48 Ind. App. 319, 326, 95 N. E. 680, is applicable here: " 'Whenever one person is placed in such a position with regard to another that it is obvious that if the former does not use ordinary care and skill in his own conduct he will

cause danger of injury to the person or property of the latter, a duty arises to use ordinary care and skill to avoid such danger.' " This case cited an earlier case, *Conner* v. *Winton* (1856), 8 Ind. 315, 65 Am. Dec. 761, wherein the defendant had undertaken to doctor plaintiff's horse and the horse died. The court held that, even though there was no agreement that the defendant should be paid, he was responsible for the consequences of his negligent acts.

The appellees presented convincing proof that the furnace was set up and operated by appellant in a room with only minor air leaks to the rest of the house and with no air supplied from outside the residence. Additional proof of a history of incomplete combustion in the furnace from the time it was set up to the time of the fire was also given. From these facts, the court was justified in finding the oxygen in the furnace room, on the night in question, had become exhausted.

Appellees assert the findings do show that they were in the exercise of due care and contend that this case comes within the rule announced in the case of *Kelley, Glover & Vale* v. *Heitman* (1943), 220 Ind. 625, 631, 44 N. E. 2d 981, as follows:

> "Nothing can be added to a special finding by way of inference, presumption, or intendment; and the omission of a material fact from the special finding is deemed a failure of proof as to such fact and amounts to a finding against the party having the burden of proof thereon. *Rankin* v. *McCollister* (1911), 175 Ind. 387, 93 N. E. 209. However, where the primary facts found lead to but one conclusion or where such facts are of such a character that they necessitate the inference of an ultimate fact, such ultimate fact will be treated as found by the trial court and sufficient on appeal. In such instances, the facts are sufficiently found though there may be a technical defect of state-

ment in the finding. In determining whether conclusions of law are supported by a special finding of facts, it is necessary to bear in mind the rule that a special finding, like a special verdict, a series of instructions, or the like, must be considered as a whole and it cannot be dissected into fragmentary parts and successfully assailed in detail. One part may be considered in connection with other connected parts, or parts referring to the same transaction, and if, taken as a whole, the finding legitimately supports the judgment, it will be upheld. And in determining whether the judgment is thus supported all intendments or presumptions are in favor of the finding rather than against it."

In the instant case, the special findings are composed of ultimate facts which tend reasonably to show that the appellees were not guilty of contributory negligence.

In Finding No. 6, it was found that appellant designed and set up the entire heating plant without any direction or supervision from the appellees.

In Finding No. 7, it is found that, at the time of the fire, this installation was not completed and that at all times up to the time of the fire the appellant controlled and managed the furnace; and that the appellees at no time had management and control of said furnace.

In Finding No. 11, it is found that the fire was caused by the ignition of inflammable gases plus unburned oil in the furnace and furnace room, which condition was caused by oxygen exhaustion which, in turn, was caused by the failure of appellant to install a fresh air duct.

The fire was found to have resulted from conditions within the control of appellant and outside any conditions within the control of appellees. Under these circumstances, no negligence on the part of appellees could possibly have contributed to the house being set on fire.

Appellees assert that the following findings show the source of the flame:

"Finding 5 shows the defendant did install the furnace with automatic controls.

"Finding 11 shows that the cause of the fire was the result of ignition of inflammable gases plus unburned oil in the furnace and furnace room caused by the way the furnace was installed.

"These primary facts lead to but one conclusion: That the ignition occurred by virtue of the automatically controlled furnace. In addition to this, the facts found are of such a character that they necessitate the inference of the ultimate fact that the operation of the furnace did cause the ignition of the gas and oil and thereby, the house.

"Appellant's negligence was found to be creating of the unsafe condition which was present and active in the resulting fire. Under the circumstances created by the appellant's lack of due care, any source of ignition in the furnace room would have set in motion the destructive forces, established by such lack of due care, which were restrained only by the thread of the not yet present ignition. The chain of causation is not broken by the mediation of what can reasonably be expected.

In this regard, appellees cite the case of *Huntington Light, etc., Co.* v. *Beaver* (1905), 37 Ind. App. 4, 73 N. E. 1002, and set out part of the holding in answer to appellant's proposition on this point:

"It is argued that the answers of the jury that there was no evidence as to who ignited the gas, or how it was ignited, excludes every condition authorizing a recovery. But the fact of the explosion is not controverted. Nor do the findings show that appellee had anything to do with igniting the gas. If appellant's negligence in permitting the gas to continue escaping into the building was present and active at the time the accident happened—and in construing the complaint we have held that it was—and the gas was neither ignited by appellee, nor became ignited through any fault

of his, the agency through which it did become ignited is not of controlling importance."

Appellant finally contends the trial court erred in overruling his motion to withdraw the issue of law presented by the motion for a new trial under the provisions of Rule 1-13 of the Supreme Court.

We have heretofore set out from the record the statement of the trial judge in overruling this motion. Notwithstanding the affidavit of one of the appellant's attorneys for a reconsideration of the ruling on this motion, we are of the opinion the motion was properly overruled. Furthermore, under the herein attendant circumstances, we have serious doubts if Rule 1-13 has any application to the consideration of a motion for a new trial, in view of the provisions of Rule 1-9 of the Supreme Court. See *State ex rel. Harlan* v. *Municipal Court* (1943), 221 Ind. 12, 46 N. E. 2d 198.

We have considered all contentions of error presented by appellant and find that the same are not substantiated by the record.

Judgment affirmed.

Bierly, Gonas and Kelley, JJ., concur.

NOTE.—Reported in 178 N. E. 2d 750.