IN RE ESTATE OF DEWITTE *v*. DEWITTE.

[No. 20,553. Filed December 27, 1966. Order for Petition for Oral Argument filed January 9, 1967. No petition for Rehearing Filed.]

*Thomas P. Loughlin, William T. Means, Donald R. Myers,* and *Bingham, Laughlin, Means & Bodine,* of Mishawaka, for appellants.

*F. Richard Kramer,* and *Schindler, Van Tilbury & Kramer,* of Mishawaka, for appellees.

BIERLY, J.—This cause comes to us following an adjudication by the trial court upon the appellee's petition, filed on June 24, 1963, to determine heirship in the estate proceedings of Joseph DeWitte, deceased. Said petition is as follows:

"STATE OF INDIANA ⎫  IN THE ST. JOSEPH
⎬ SS: SUPERIOR COURT NO. 2
"ST. JOSEPH COUNTY ⎭  ESTATE NO. 18670

"IN THE MATTER OF THE ESTATE ⎫
OF JOSEPH D. DeWITTE, DECEASED.  ⎪  VERIFIED
⎪  DETERMINED
"ALICE MARIE SWIFT AND  ⎬  PETITION TO
ALBERT DeWITTE,  ⎪  HEIRSHIP
CO-PERSONAL REPRESENTATIVES ⎭

"Nellie DeWitte, being first duly sworn upon her oath deposes and says:

"Your petitioner respectfully represents that Joseph D. DeWitte died on the 5th day of June, 1963, a resident of St. Joseph County, State of Indiana;

"That administration upon the estate of the deceased Joseph D. DeWitte is being had in this cause and in this court;

"That your petitioner is interested in the estate of the said Joseph D. DeWitte, deceasec, by reason of being the surviving wife of the said Joseph D. DeWitte;

"That said decedent died intestate;

"That your petitioner is informed and verily believes that the names of all of the heirs of the said Joseph D. DeWitte, deceased, and the degrees of their relationship to decedent are as follows:

"1. Nellie DeWitte, the petitioner herein, surviving wife.
"2. Alice Marie Swift, surviving adult daughter.
"3. Albert DeWitte, surviving adult son.

"That it is necessary and advisable that a determination of heirship be had at this time for the reason that in the proceedings of administration of the estate of the said Joseph D. DeWitte and being particularly the petition for the appointment of the Co-Personal Representatives, the name of this affiant and listing her as the surviving wife was omitted and circumstances since the death of the said Joseph D. DeWitte would appear to indicate that an attempt will be made to not recognize this affiant as the surviving wife and one of the heirs at law of the deceased Joseph D. DeWitte.

"WHEREFORE, petitioner prays for an order of Court determining the heirs of the said Joseph D. DeWitte, deceased.

"(signed)
Nellie DeWitte

"Subscribed and sworn to before me this 24 day of June, 1963.

"(signed)
Leo Van Tilbury, Notary Public

"My Commission expires: September 13, 1964."

The trial court found for the appellee, entering judgment thereon, on November 12, 1965; thus, finding that appellee

was Joseph DeWitte's common-law wife. Said order is as follows:

### "ORDER DETERMINING HEIRSHIP

"This cause came on to be heard on the petition of Nellie DeWitte for determination of heirship with respect to the decedent herein; and the interested parties being represented by counsel and properly before the court, and, the court having heard and considered the evidence adduced by the parties, now finds that the decedent was survived by his widow, Nellie DeWitte, the petitioner herein, a daughter, Alice Marie Swift, and, a son, Albert DeWitte.

"IT IS THEREFORE ORDERED, CONSIDERED, AND ADJUDGED that the decedent herein was survived by his widow Nellie DeWitte, a daughter, Alice Marie Swift and a son Joseph DeWitte, and that these persons are entitled to share in his estate pursuant to the laws of the State of Indiana.

"IT IS FURTHER ORDERED AND DECREED that the temporary injunction heretofore entered on the 16th day of October, 1964, enjoining the said Nellie DeWitte from disposing of the follow-described real estate in St. Joseph County, Indiana, to-wit:

"Lots Numbered Forty-five (45) and Forty-six (46) in Milburn Place addition to the City of Mishawaka

or the personal property located therein, be and the same is hereby dissolved.

"Dated this 12 day of November, 1965.

"F. KENNETH DEMPSEY
"Judge, St. Joseph Superior Court"
"(Ct. Seal)

The appellants' sole assignment of error is that the trial court erred in overruling their motion for a new trial. Contained within said motion are the following specifications:

"1.  The decision of the Court is not sustained by sufficient evidence;

"2.  The decision of the Court is contrary to law;

"3.  The Court erred in overruling the Defendant's motion for a judgment at the close of the petitioner's evidence."

The motion of appellants for judgment at the close of the appellee's evidence reads as follows:

"At this time I believe the respondent will move for judgment against the Petitioner on the ground that although there is a mixup of evidence here, and we have a bank account that is in the name of Nellie Lewis or Joseph DeWitte, and we have Deeds that indicate a relationsjip of husband and wife, and the Petitioner has related certain conversations, by her own admission while she was sitting here and very competently answering all these questions, did she indicate that she was not in fact the commonlaw wife of the decedent; she indicated she did not think she was entitled to any of his social security. She got it from her first husband; got some from her own job, in the name of Nellie Lewis; that everything that she says here really points to a pleasant companionship and what really is a working agreement with Joseph DeWitte, but not basically a husband and wife type of arrangement, and there is no contract of marriage."

Appellants' motion was overruled, and they then proceeded to present their case.

The body of case law governing common-law marriages in Indiana is extensive. An examination of these cases discloses the gradual emergence of a progressive attitude by the courts in laying down more and more stringent legal requirements when validating common-law marriages. The ultimate effect of this progressive attitude of the court and the disfavor of public opinion led to the abolition of common-law marriages in this state.[1]

---

1.  Common-law marriages were abolished in Indiana as of January 1, 1958. See: Burns' Ann. Stat. § 44-111 (1965 Replacement).

The leading case in Indiana concerning common-law marriages is the case of *Anderson* v. *Anderson,* (1956), 235 Ind. 113, 131 N. E. 2d 301. Among other rules found in the *Anderson* case, *supra,* we note the following:

"A contract by words in the present tense, or per verba de praesenti as the books express it, to be married or to be husband and wife, to comply with the well settled law on the subject must, of necessity, be an express contract, although it need not be in writing, and need not be in any particular words. In cannot be an implied contract, such as the law raises in the case of quasi contracts or in actions of assumpsit. An express contract can only be created by an offer and acceptance. There must be words to create an offer although the acceptance can be made by either words or acts, according to the terms of the offer . . . Cohabitation, reputation or other conduct may corroborate evidence that there was a contract, or in the absence of testimony by one of the parties as to what the agreement was, if any, it might, in a strong case, be sufficient to draw the inference that there was a contract to marry in the present tense, but the contract must be formed by what was said and done by the parties, and when the testimony of the party asserting and relying upon the contract discloses there was no language in the present tense constituting a contract to marry, then cohabitation, reputation and other conduct cannot constitute words which were never spoken or used.

"Even where there is evidence of an oral contract not witnessed, our courts have made additional requirements to establish the validity of a common-law marriage. 'But where the contract between the parties is oral but not witnessed, even though followed by cohabitation, an additional factor is necessary to establish a common-law marriage. *Under such circumstances there must be a holding out by the parties of their marriage status to at least such part of the public in their community in which they live as is made up of their acquaintances, neighbors and relatives.' Schilling* v. *Parsons, Admr.* (1941), 110 Ind. App. 52, 58, 36 N. E. 2d 958. See also *In Re Lambert's Estate* (1945), 116 Ind. App. 293, 302, 62 N. E. 2d 871. (Our emphasis.)

". . . Cohabitation, reputation, tax returns, insurance provisions, and the birth of a child do not constitute a contract of marriage per verba de praesenti."

Judge Emmert, in the case of *Anderson* v. *Anderson, supra,* in referring to the complaint and certain testimony, said at page 123:

> "The complaint in this case did not allege that there was any contract of marriage per verba de praesenti,[3] and the evidence when viewed in favor of the appellee, with all reasonable inferences that could be drawn therefrom, fails to show such a contract. *Moreover, the testimony of the appellee herself, who would be presumed to state the case as favorably as she could to maintain the alleged marriage, affirmatively proved there never was a contract in the present tense to be married.* In fact, her testimony merely corroborated that of the appellant, who in substance testified the reason he never would agree to marry her was that she had been married in Birmingham and never divorced, that she went there to get a divorce and came back and told him she had obtained a divorce, which he did not believe since she had only been in Birmingham three days, and he was smart enough to know she could not get a divorce in three days."[2]

Judge Emmert later stated in the opinion that;

> "This record affirmatively discloses there was no contract of common-law marriage."

The next major decision in the area of common-law marriages was the case of *In Re Sutherland's Estate* (1965) 246 Ind. 234, 204 N. E. 2d 520. The Supreme Court in this case overruled the decision of the Appellate Court as published in 195 N. E. 2d 778, after accepting transfer of said cause. The primary authority used in both of the above opinions was the *Anderson* case, *supra.* In the *Anderson* case, *supra,* the Supreme Court laid down what was to be the strictest rules governing common-law marriages in Indiana.

In *In Re Sutherland's Estate* case, *supra,* the Supreme Court appears to be taking a step backward from the *Anderson* case, *supra.* However, in the *In Re Sutherland's Estate* case, *supra,* the facts were of such a nature that it would have been difficult not to find that a common-law marriage

---

2. Footnote No. 3, appearing in quotation, is omitted.

existed. To quote from the case at page 522, of the opinion, the evidence showed that:

". . . They went to the clerk's office in Jeffersonville, Indiana to obtain a marriage license and found the office was closed . . . The evidence shows that the decedent gave the appellee a wedding ring on August 22, 1956. There is also evidence from a third party, who stated that the appellee and the decedent drove up and announced to him that they 'had just got married' and that he then congratulated them. It further appears that thereafter they lived as husband and wife and held themselves out as such; that a child was born and the child was dedicated by the minister of the Pilgrimage Holiness Church at Centerville and a certificate was issued by the minister to the parents of the child, the appellee herein, and the decedent.

"It appears further that the decedent lived for the most part with the appellee in Scottsburg, Indiana, but that he had a barber business and some rental property in Seymour and there were occasions when he did not return to spend the night in the Scottsburg home. This, in our opinion is competent evidence going to show that both parties had consummated a contract *in presente* sufficient to support the judgment of the trial court should the trial court see fit to believe it without the support of other testimony which we find inadmissible."

Evidently, the Supreme Court, in this case, was of the opinion that this case was the exception to the general rule as stated in *Anderson, supra,* said exception being as follows:

". . . or in the absence of testimony by one of the parties as to what the agreement was, if any, it might, in a *strong* case, be sufficient to draw the inference that there was a contract to marry in the present tense, but the contract must be formed by what was said and done by the parties, and when the testimony of the party asserting and relying upon the contract discloses there was no language in the present tense constituting a contract to marry, then cohabitation, reputation and other conduct cannot constitute words which were never spoken or used." (Emphasis added).

In the case at bar, the evidence most favorable to the appellee, together with all reasonable inferences to be drawn therefrom, may be summarized as follows.

Mr. Theo Verleye, testifying as a witness for the appellee, stated that he was an insurance agent who had known the decedent for about twenty-five (25) years. He had also known the petitioner for as long. He had written insurance on some property they owned. It was written in their names as husband and wife. He had also made out some tax returns for them. They were joint returns. He saw them frequently, and assumed them to be husband and wife.

Adeline Myers was then called to testify on behalf of the petitioner. She was a neighbor of petitioner and decedent for about fourteen (14) years. She heard them refer to each other as husband and wife. She stated they had a reputation in the neighborhood as being husband and wife.

The petitioner then took the stand. She testified that she met Joseph DeWitte in 1948. She lived on West Fifth Street in some property she owned. Her former husband died in 1947; his name was Frank Herbert Lewis, and they were married almost twenty-four (24) years. She had lived with Joseph DeWitte for fifteen (15) continuous years. She told her friends that they were husband and wife, and she introduced herself as Nellie DeWitte to the neighbors. She further testified that she believed herself to be the deceased's wife.

Joseph DeWitte's daughter-in-law believed them to be married. Joseph DeWitte's son, Albert, admitted accepting a deed as a gift from them, said deed listing as grantors the names of Joseph and Nellie DeWitte, husband and wife.

There were also other deeds which were admitted into evidence as exhibits. Petitioners' Exhibit Number Two (2) is a copy of a warranty deed in which Joseph DeWitte (surviving spouse of Martha DeWitte, deceased) and Nellie DeWitte, his wife, conveyed:

"Lot Numbered One Hundred Sixty (160) in Milburn Place Land Company's Addition to the City of Mishawaka."

to Alice M. Swift and Robert W. Swift, her husband, and Albert DeWitte and Marie DeWitte, his wife.

Petitioners' Exhibit Number Three (3), also is a copy of a warranty deed, in which Walter Hughes, single, conveyed:

"Lot Numbered Forty-five (45) in Milburn Place Addition to the City of Mishawaka, St. Joseph County, Indiana,"

to Joseph DeWitte and Nellie DeWitte, husband and wife, and said deed was duly acknowledged as required by law.

Petitioner's Exhibit Number Four (4) is a copy of a deed identical to Exhibit Number Three (3) as above stated, except that the grantor is Jesse Hughes (wife deceased), and the description of the real estate was Lot Number Forty-six (46) in said addition.

Petitioners' Exhibit Number Five (5) is a copy of a warranty deed in which Nellie Lewis DeWitte, survivor of Frank H. Lewis, deceased, and Joseph DeWitte, her husband, conveyed:

"The East One-Half (½) of the East One-Half (½) of Lot No. 1 as shown on the recorded Plat of Krillenbergers Addition to the City of Mishawaka, Indiana,"

to Theophiel Verleye and Anna Verleye, husband and wife, as trustees for the purpose of conveying.

Petitioners' Exhibit Number six (6) is a copy of a quit-claim deed executed by Theophiel Verleye and Anna Verleye, husband and wife, as trustees, conveying their interest to the same real estate described in Exhibit Number Five (5) above, to Joseph DeWitte and Nellie Lewis DeWitte, husband and wife.

By the execution of the various deeds listed above and which deeds were duly recorded in the official records of the county, it appears that credence of a high order is shown as exhibiting the strongest inference that a definite common-law marriage relationship existed in the case of Joseph DeWitte and Nellie Lewis DeWitte. The recordation of the original deeds, copies of which were admitted as testimony and in evidence, constitutes a public rec-

ord, and warrants acceptance of their verity by the public. Further, a failure of the legality of such deeds would cast a shadow or cloud upon title to real estate described in such deed or deeds.

The appellants' first contention is that the appellee has failed to show an express contract to marry, which is alleged to be necessary to find a common-law marriage. With this we disagree. The case of *In Re Sutherland's Estate* (1964), 195 N. E. 2d 778, was, of course, reversed by the Supreme Court. But is was reversed not on the question of the prerequisite for a common-law marriage, but on the admissibility of certain evidence. The majority opinion of the Supreme Court in the *In Re Sutherland's Estate* case, *supra*, stated at page 524:

> "Although, as stated above, there is some evidence of a contract of marriage *in presente*, we cannot say, after excluding the objectionable testimony of a 'ceremony', that the trier of the facts would still reach a finding of fact to that effect. The trial in this case was before the court without a jury."

Two judges dissented from the majority opinion and held that:

> "Even if such evidence [about a ceremony] was improperly admitted, it was not prejudicial for the reason that appellee could have been, and was, declared to be the widow of the deceased in the absence of such testimony. Thus, as the Appellate Court points out, the error, if it existed, was harmless. See Bowers, Admr. v. Starbuck (1917), 186 Ind. 309, 313, 116 N. E. 301."

In the case at bar, there were no objections interposed to the testimony of appellee as was the situation in the *Sutherland* case, *supra*, because of being the alleged widow of the decedent, Joseph DeWitte, in reference to the so-called "dead mans statute." Therefore, we are of the opinion that the remaining position taken by the Appellate Court in *In Re Sutherland's Estate* case, *supra*, is valid and sound law. It was stated in that case on page 783, in the majority opinion, that:

"Like other fact questions, the fact of agreement or contract of marriage may be inferred from all the attending circumstances made apparent by all the evidence."

The appellants in the *In Re Sutherland's Estate* case, *supra,* also placed heavy reliance on the *Anderson* case, *supra.* In referring to the *Anderson* case, *supra,* in *In Re Sutherland's Estate* (1964), 195 N. E. 2d 778, 783, we quote:

"Furthermore, we find nothing in that opinion which indicates or suggests that the contesting parties had held themselves out in the community as living in the relationship of the marriage status. It follows that the expressions of the court in that case, apart from those necessary and essential to the determination of the actual question presented upon the stated, proven, factual situation, are not so far conclusive as to debar interpretive adoption of reasonable, necessary and impelling inferences drawn from various proven circumstances in the determination of whether there was a 'contract of marriage between the parties in words of the present tense.' "

Thus, we find no error in this respect.

Appellants' next contention is that petitioner has failed to show a holding out of the marital status to the community in which she lived, composed of their acquaintances, neighbors and relatives.

We find no merit in this contention, for, as we pointed out in the summary of evidence, she did in fact hold herself out as the wife of Joseph DeWitte.

The next contention is that appellee has failed to meet her burden of proving a common-law marriage by clear and convincing proof. Again, we are of the opinion that the trial court did not err in this respect.

Next the appellants state that common-law marriages have come into increasing disfavor in Indiana, both with the courts requiring more stringent proof of the relationship, and by the legislature's action in out-lawing such relationships. With this statement we agree, however, we

cannot agree with the contention that more stringent proof is needed on an accelerating basis, each case requiring more proof. We believe that the law in regards to common-law marriages, prior to January, 1958, has narrowed about as much as it is going to narrow, and we are not inclined to further limit the necessary requirements of a valid common-law marriage.

Appellants next turn to the third specification in their motion for a new trial, to-wit: The court erred in overruling the defendants' motion for judgment at the close of petitioners' evidence.

Under this specification, the appellants allege that the appellee has failed to offer any evidence of an express contract. We find no error in this regard, since having previously discussed this point in a prior specification, and finding that said contract may be inferred from the attending circumstances made apparent by the evidence.

The next point appellants make with regard to the motion for a judgment is that it should have been sustained because the appellee has failed to introduce any evidence of a holding out of the marital status to relatives. After having re-read appellants' motion, we find that this point was not raised within said motion; thus, it was not first presented to the trial court for its consideration. Hence, we will not consider it. The same may be also said for the appellants' first contention that the appellee has failed to sustain her burden of proving a common-law marriage by clear and convincing evidence, particularly where said relationship was meretricious at its inception.

With regard to the first portion of this specification we find no error, as there was clear and convincing evidence of a common-law marriage many years prior to January 1, 1958, at the close of appellee's evidence.

With regard to the latter part of the specification, the appellants state in their brief that:

". . . the uncontroverted evidence by the appellee shows that her relationship with the decedent was meretricious in its origin."

But yet this was not raised by the motion for a judgment, and, therefore, was not first presented to the trial court for determination. So, we shall not consider this point.

Having found no reversible error, we must affirm the decision of the trial court.

Judgment Affirmed.

Mote, P. J., Hunter and Smith, JJ., concur.

NOTE.—Reported in 222 N. E. 2d 285.