IN THE MATTER OF THE ESTATE OF IVAN ROBERT PARRISH, DECEASED, VIRGINIA NORRIS AND WILLIAM PARRISH, CO-ADMINISTRATORS *v.* MARY MORTOR (PARRISH).

[No. 572A244. Filed March 1, 1973. Rehearing denied March 29, 1973. Transfer denied August 15, 1973.]

*William R. Clifford, Jones, Withers & Clifford,* of Anderson, for appellants.

*Bayne Burton,* of Anderson, for appellee.

SULLIVAN, J.—This is an appeal from a judgment in favor of defendant-appellee, Mary Mortor "Parrish" (hereinafter Mary) upon a petition to determine heirship filed by plaintiffs-appellants Virginia Norris and William Parrish, as Co-Ad-

ministrators. Mary was judicially determined to have been the common law wife of the deceased, Ivan Robert Parrish (Parrish).

On September 23, 1971, appellants filed the Petition to Determine Heirship in which they asserted that the sole heirs of Parrish were, as of that time, his children. On October 15, 1971, Mary filed an objection to plaintiffs' petition alleging that she was the wife of Parrish by virtue of a common law marriage. Trial was held before the court on December 30, 1971 and the court entered judgment, finding Mary to be the wife of Parrish and sustaining her objections to plaintiffs' Petition to Determine Heirship. Plaintiffs timely filed a Motion to Correct Errors which was overruled.

Three issues are presented for review:

1) Was the decision supported by the evidence?
2) Did the court err in sustaining defendant's objections to testimony as to conversations with decedent concerning his relationship with Mary?
3) Did the court err in admitting certain documents over plaintiffs' objection?

## DECISION BELOW IS NOT WITHOUT EVIDENTIARY SUPPORT

Burns Indiana Statutes, Section 44-111 provides as follows:

"All marriages known as 'common law marriages' entered into subsequent to the effective date of this act shall be and the same are hereby declared null and void."

The above statute, being Acts 1957, Chapter 78, Section 1, page 138, became effective January 1, 1958. Thus, in the instant case the defendant, as proponent of the common law marriage, had to establish that such marriage existed prior to the effective date of the statute. In viewing the evidence, we need consider only that evidence most favorable to Mary and in support of the trial court's determination that she was in fact prior to 1958, Parrish's common law wife. That evidence is as follows:

Mary lived with Parrish from 1954 until his death on March 24, 1971. There was never a religious or civil marriage ceremony. A next door neighbor testified that in 1953 or thereabout decedent and Mary lived together along with Mary's daughter and Parrish's son Eugene and that Parrish referred to Mary as his wife. There was no question in the neighbor's mind but that they were man and wife.

Parrish and Mary, as husband and wife, visited her son Harry Mortor in Newport, Virginia and in Waukegan, Illinois. Parrish introduced Harry at times as his step-son.

Parrish's sister, Antha Lacey, testified that in 1954, Parrish introduced Mary as his wife. The sister also testified that Mary helped Parrish build a home in that she helped lay blocks and that she cooked for him and carried water, etc. She further testified that Parrish excitedly showed her rings he had purchased for Mary. Parrish filed tax returns as a single man through 1958, but in 1959, amended the 1957 and 1958 returns to reflect Mary as his wife. As stated in *Sutherland* v. *Sutherland* (1965), 246 Ind. 234, 238, 204 N.E.2d 520, 522:

> "For the purpose of determining this question we must, to some extent, review the evidence in the light of *Anderson* v. *Anderson* (1956), 235 Ind. 113, 131 N.E.2d 301, which holds that to be a valid common-law marriage, there must be an express contract of marriage consummated in presente. In other words, the mere living together as husband and wife and holding out as a married couple is not sufficient evidence to constitute a common-law marriage. We said at page 122, 131 N.E.2d at page 306:
>
>> 'A contract by words in the present tense, or per verba de praesenti as the books express it, to be married or to be husband and wife, to comply with the well settled law on the subject must, of necessity, be an express contract, although it need not be in writing, and need not be in any particular words. * * *'
>
> "The basis for that decision was that in this day and age the law does not look with favor upon common law marriages, since a public record and ceremony may be made thereof with ease, and thereby set at rest any questions of title or interest in property, inheritance or legitimacy of

children. We are not living in the frontier days where hardships existed in attempting to make a public record of a marriage."

In the announcement of the findings and judgment from the bench, the trial court indicated that filing of amended tax returns for 1957 and 1958 by Parrish indicated his intent and acknowledgment that as of that time, 1957, he and Mary were husband and wife and that the fact that Parrish as early as 1953 or 1954 introduced Mary to various people as his wife, reinforced the *in presente nature* of the marriage contract.

We think such conclusion was justified and that a reasonable trier of fact could find that the test enunciated in *Sutherland* v. *Sutherland, supra,* and its predecessors, with respect to establishment of a common law marriage was met. *DeWitte* v. *DeWitte* (1966), 140 Ind. App. 114, 222 N.E.2d 285.

The *DeWitte* case analyzes the *Sutherland* and *Anderson* opinions in relation to facts strikingly similar to those before the trial court in this case:

"The appellants' first contention is that the appellee has failed to show an express contract to marry, which is alleged to be necessary to find a common-law marriage. With this we disagree. The case of *In Re Sutherland's Estate* (1964), 195 N.E.2d 778, was, of course, reversed by the Supreme Court. But it was reversed not on the question of the prerequisite for a common-law marriage, but on the admissibility of certain evidence. The majority opinion of the Supreme Court in the *In Re Sutherland's Estate* case, *supra,* stated at page 524:

'Although, as stated above, there is some evidence of a contract of marriage *in presente,* we cannot say, after excluding the objectionable testimony of a "ceremony", that the trier of the facts would still reach a finding of a fact to that effect. The trial in this case was before the court without a jury.'

"Two judges dissented from the majority opinion and held that:

'Even if such evidence [about a ceremony] was improperly admitted, it was not prejudicial for the reason that ap-

pellee could have been, and was, declared to be the widow of the deceased in the absence of such testimony. Thus, as the Appellate Court points out, the error, if it existed was harmless. See *Bowers, Admr.* v. *Starbuck* (1917), 186 Ind. 309, 313, 116 N.E. 301.'

"In the case at bar, there were no objections interposed to the testimony of appellee as was the situation in the *Sutherland* case, *supra,* because of being the alleged widow of the decedent, Joseph DeWitte, in reference to the so-called 'dead mans statute.' Therefore, we are of the opinion that the remaining position taken by the Appellate Court in *In Re Sutherland's Estate* case, *supra,* is valid and sound law. It was stated in that case on page 783, in the majority opinion, that:

'Like other fact questions, the fact of agreement or contract of marriage may be inferred from all the attending circumstances made apparent by all the evidence.'

"The appellants in the *In Re Sutherland's Estate* case, *supra,* also placed heavy reliance on the *Anderson* case, *supra.* In referring to the *Anderson* case, *supra,* in *In Re Sutherland's Estate* (1964), 195 N.E.2d 778, 783, we quote:

'Furthermore, we find nothing in that opinion which indicates or suggests that the contesting parties had held themselves out in the community as living in the relationship of the marriage status. It follows that the expressions of the court in that case, apart from those necessary and essential to the determination of the actual question presented upon the stated, proven, factual situation, are not so far conclusive as to debar interpretive adoption of reasonable, necessary and impelling inferences drawn from various proven circumstances in the determination of whether there was a "contract of marriage between the parties in words of the present tense".' "
(140 Ind. App. 114, 124-125.)

With respect to the point of distinction made by the *DeWitte* opinion concerning the testimony of the common-law widow, we note that such testimony, though not objected to, did not as reflected in the opinion purport to establish the existence of any words "de praesenti", (as opposed to acts) which passed between the common law husband and the common law wife as presumably required by the *Anderson* decision. The common-law wife's testimony in *DeWitte* was therefore,

cumulative in nature and not essential to the result reached in that unanimous opinion. Consequently, we do not view the totality of evidence before the court in *Dewitt* as substantially different in substance or degree from that evidence properly before the trial court below. As hereinafter noted, however, such does not permit affirmance of the judgment.

Counsel for appellee has seen fit to ignore in his brief, Issues 2 and 3 as argued by appellants. Thus, appellants need only demonstrate prima facie error upon one of those issues in order to win reversal. *Michels* v. *Young Metal Products, Inc.* (1971), 148 Ind. App. 502, 267 N.E.2d 572.

## ERROR, IF ANY, IN EXCLUDING CONVERSATIONS WITH DECEDENT WAIVED BY ABSENCE OF OFFER TO PROVE

Appellants assert as Issue 2 that the court erred in excluding certain conversations had with decedent concerning his relationship with Mary. The court's ruling however was not followed by an offer to prove what the testimony would have been if the witnesses were allowed to answer. The error, if any, was therefore waived. *Rule TR. 43(C); Flynn* v. *Reberger* (1971), 149 Ind. App. 65, 270 N.E.2d 331.

## COURT ERRED IN ADMITTING DOCUMENTARY EVIDENCE IN THE FORM OF BILLS AND RECEIPTS WITHOUT IDENTIFICATION OR AUTHENTICATION

Three exhibits were admitted into evidence over plaintiff's objections, i.e., dental bills sent to Mary as "Mrs. Robert Parrish"; receipts from a furniture store addressed to "Robert and Mary E. Parrish"; and personal property tax receipts bearing the names, "Parrish, Robert and Mary Ellen".

Issue 3 concerns the admission of these three exhibits into

evidence over objection which in essence alleged that such exhibits had not been properly identified or authenticated and were pure hearsay.

Appellants rely upon *Tyrcs* v. *Kennedy* (1891), 126 Ind. 523, 526, 26 N.E. 394, which noted:

> "Conceding, for the purposes of argument, that the assessment list of the appellant for the year 1887 was competent, there was no error committed in excluding the paper offered, for the reason that there was no evidence before the court identifying it as the original paper, and no offer to identify it as such."

With respect to the documents admitted below, the record is totally devoid of proper identification and authentication save the rank conclusion of persons wholly without knowledge of the documents or having ever seen them prior to trial. We must therefore agree with appellants that such documents constituted inadmissible hearsay. *Romey* v. *Glass* (1950), 120 Ind. App. 279, 91 N.E.2d 850.

In *Sutherland* v. *Sutherland, supra,* the Supreme Court held:

> "This, in our opinion is competent evidence going to show both parties had consummated a contract *in presente* sufficient to support the judgment of the trial court, should the trial court see fit to believe it without the support of other testimony which we find inadmissible.
>
> * * *
>
> "Although, as stated above, there is some evidenec of a contract of marriage *in presente*, we cannot say, after excluding the objectional testimony of a 'ceremony', that the trier of the facts would still reach a finding of fact to that effect. The trial in this case was before the court without a jury." (246 Ind. at 239 and 243.)

(Compare an earlier decision to the contrary by the Indiana Appellate Court in *Romey* v. *Glass, supra,* wherein the Court upheld a judgment finding appellee to be a common law spouse even though the trial court had erroneously admitted documentary hearsay evidence in the form of various bills and invoices with respect to the marital relationship.)

Thus, while a reasonable trier of fact might find the husband-wife relationship here to have legally existed exclusive of any consideration of the documentary evidence objected to by plaintiffs-appellants, we cannot speculate that such would necessarily be the case particularly in view of the fact that the trial court made specific reference to such evidence in his oral bench findings, in further view of the fact that appellee's counsel did not see fit to combat appellants' argument in this regard but more importantly in view of the above-quoted holding from *Sutherland* v. *Sutherland,* which in turn quotes from *Anderson* v. *Anderson* (1956), 235 Ind. 113, 131 N.E.2d 301.

Accordingly and by authority of Rule AP. 15(M), we hereby reverse the judgment and remand the cause with instructions to reopen the judgment herein and to reconsider the evidence in the light of this opinion, excluding the documentary evidence herein discussed and to enter a new judgment in the light of such reconsideration. It is further ordered that Frederick F. McClellan reassume jurisdiction for the purpose of effecting the directions of this Court.

Buchanan, P.J. and White, J. concur.