RAYMOND E. DALY, BRENDAN J. STEWART AND INCENTIVE CAPITAL CORPORATION *v.* CHARLES J. NAU.

[No. 3-274A31. Filed December 31, 1975. Rehearing denied February 3, 1976. Transfer denied July 8, 1976.]

*Gilbert Gruenberg, Clyde D. Compton, Hodges, Davis, Gruenberg, Compton & Sayers,* of Gary; *Larry G. Evans,* of Valparaiso, for appellants.

*John J. McDonagh,* of Hammond, *Herbert K. Douglas,* of Valparaiso, for appellee.

STATON, P.J.—This appeal involves an action brought by Charles J. Nau against Daly, Stewart and Incentive Capital Corporation, Appellants, to recover damages for tortious interference with the contractual relationship between Nau and Incentive.[1] After a court trial, Nau was awarded damages in the amount of $25,000.00. Appellants raise the following issues on appeal:

Issue One: Is the trial court's special finding no. 22 erroneous?

---

1. Nau originally brought this lawsuit against the above Appellants and the Bank of Indiana, another creditor of Universal, and John Nagle, Vice-President of both Incentive and Bank of Indiana. The Bank of Indiana and John Nagle, however, won an involuntary dismissal at the close of Nau's evidence. Nau has not filed a cross-appeal challenging this ruling of the trial court.

Issue Two: Is the trial court's award of damages supported by the evidence?

Issue Three: Did the trial court err in its special findings of fact nos, 8, 12, 13, 14, 15, 18, 20 and 24?

The evidence is undisputed that in February 1964, Charles Nau was a job superintendent employed by Universal Delta Central, Inc. (Universal). Universal was a general painting contractor, and in February 1964, Universal was in financial difficulty. Incentive Capital Corporation (Incentive), a small business investment company, had loaned Universal approximately $60,000 in 1963[2] and held a chattel mortgage on certain equipment and inventory of Universal. Brendan Stewart was the president and Raymond Daly was a director of Incentive.[3] On February 21, 1964, Charles Nau came to Chicago upon the invitation of Daly for a meeting regarding Universal. Later in the day, Nau entered into the following agreement, dictated by Daly, with Incentive:

"MEMORANDUM TO: Mr C. J. Nau    February 21, 1964
REFERRING TO: UNIVERSAL DELTA CENTRAL, INC.

It has been agreed upon today by our company and you to enter into what might be termed a joint venture. Both of us agree to pay $25,000 cash into the above described company. Incentive Capital Corporation agrees to the purchase of all outstanding stock not owned by them if possible, but at least 25% which is now owned by Lou Glaras and T. T. Nau.

2. The record is confusing as to the actual amount of Incentive's initial loan to Universal. At various places in the record the amount of the loan is stated to be either $60,000 or $75,000.

3. Perhaps the following diagram will be helpful to the reader in understanding the relationship of the parties:

| | Debtor Universal | Creditor Bank of Indiana | Creditor Incentive Capital |
|---|---|---|---|
| President | Brendan Stewart | Raymond Daly | Brendan Stewart |
| Share-holders | Incentive Capital — 10 shares (50%) | Raymond Daly — *100 shares | Bank of Indiana — *20 shares |

*The record does not disclose how many shares there are outstanding in Bank of Indiana and Incentive Capital. However, the record does demonstrate that Bank of Indiana is not a majority stockholder in Incentive Capital.

From this day forward it is agreed that as superintendent of operations you will receive 50% of the profit and be granted an option to purchase 51% of the stock at the end of three years for your original $25,000.

We have further agreed to help protect you on this investment that you will not be subordinated but will be secured to our loan and that you will be further protected by our chattel on all of the equipment.

It has been agreed that within the next few weeks if you have had time to check the jobs and we have had time to bring books up todate,[sic] we will call a meeting of the creditors and endeavor to settle at some normal percentage.

"At the time of writing this memo we own free and clear 50% of the stock of Universal Delta.

/s/  John C. Nagle
John C. Nagle
Vice President

Accepted February 21, 1964:

/s/  Charles J. Nau"

Pursuant to this agreement, Charles Nau paid $25,000 to the Bank of Indiana for the benefit of Universal.

Also on February 21, 1964, the Board of Directors of Universal took the following action as disclosed by the Board's minutes:

"The following motion was moved, seconded and unanimously approved:

"RESOLVED, that the investment in Universal Delta Central, Inc. by Mr. Charles Nau of $25,000 is hereby acknowledged and accepted; and, that the company hereby employs Mr. Charles Nau as Consultant at a weekly draw of $200.00 against 50% of net profits before Federal corporation taxes.

"The following motion was moved, seconded and unanimously approved:

"RESOLVED: That the officers of this company are hereby authorized and directed to execute a promissory note in the amount of $15,000 payable in thirty monthly installments of $500.00 each at an interest rate of 5%, said note to be payable to the Pittsburgh Plate Glass Company, a copy

of said promissory note being attached hereto and specifically incorporated by reference into and as a part of this resolution;

"FURTHER, that the officers of this corporation are hereby authorized and directed to execute a chattel mortgage of even date with the aforesaid promissory note to the order of Pittsburgh Plate Glass Corporation on all equipment owned by Universal Delta Central, Inc.; . . ."

On March 12, 1964, Universal executed a promissory note to Pittsburgh Plate Glass Company (PPG) for $15,000 payable in 30 monthly installments of $500.00 and secured by a chattel mortgage on Universal's equipment. This promissory note was signed by Stewart as President of Universal. Stewart, as President of Incentive, also executed an assignment of Incentive's right, title and interest to the equipment covered by the chattel mortgage referred to in the February 21st agreement to PPG.[4] On March 17, 1964, Incentive contributed $25,000 to Universal pursuant to the February 21st agreement. On or about May 13, 1964, the United States government seized all equipment and supplies of Universal for delinquent taxes. These items were released, however, when it was determined that the taxpayer corporation (Universal) had no equity in the items seized. At this time, the business of Universal ceased, and Charles Nau never recovered any of the $25,000 he invested in Universal pursuant to the February 21st agreement.

## I.

### Interference

At Appellants' request, the trial court made special findings of fact pursuant to Indiana Rules of Procedure, Trial Rule 52(A). On appeal, Appellants challenge special finding no. 22 which provides:

4. Underlying the promissory note to PPG was an agreement between Universal and PPG whereby PPG would pay $81,000 owed by Universal to various subcontractors in return for $66,000 in contract payments due Universal. The $15,000 difference was to be covered by the note and chattel mortgage executed by Universal to PPG.

"22. The assignment of the Incentive Capital Corporation chattel mortgage and the execution of the new chattel mortgage, both to Pittsburgh Plate Glass Company, amounted to an interference by the Defendants with the contract between Incentive Capital Corporation and Plaintiff."

Appellants contend that the assignment of Incentive's chattel mortgage did not amount to interference with the February 21st agreement because the evidence is uncontradicted that Daly was to handle the financial end of Universal and Nau was to be in charge of the field operations. Appellants reason that since Daly was responsible for financial matters, there was no need to get Nau's consent to the assignment of the Incentive chattel mortgage to PPG.[5]

There may be substantial questions under the facts of this case as to whether Incentive, as a party to the contract, and Daly and Stewart, as a director and officer of Incentive, could be liable for inducing a breach of the Incentive-Nau agreement, but these questions have

5. Nau in his Appellee's Brief argues that a finding of interference with contractual relationship is supported by evidence that the $25,000 contribution by Incentive pursuant to the Feb. 21st agreement was misused to reduce Universal's indebtedness to the Bank of Indiana rather than used as working capital. Although there was conflicting evidence presented at trial concerning Incentive's $25,000 contribution, the trial court made no finding of misuse of Incentive's contribution resulting in interference with the Feb. 21st agreement. The issue raised by Appellants in this appeal is whether the assignment of the Incentive chattel mortgage amounted to interference with the Feb. 21st agreement. Since we find no error regarding the trial court's finding of interference by assignment, we need not consider if the evidence supports a finding of interference with contractual relations because of alleged misuse of the $25,000 Incentive contribution.

Appellants contend in their Reply Brief that since Appellee Nau does not respond to Appellants' contention of error concerning special finding no. 22, error should be deemed admitted by this Court. It is true that when an appellee ignores meritorious issues in his appellee's brief, appellant need only demonstrate prima facie error in order to obtain reversal of the trial court's judgment. *In re Parrish's Estate* (1973), 155 Ind. App. 367, 293 N.E.2d 62. However, this is not a proper case for applying the foregoing principle of appellate review. Nau adequately argues that there was sufficient evidence to sustain the trial court's finding that the assignment to PPG amounted to interference with the Feb. 21st agreement.

been waived.[6] There is no contention in Appellants' motion to correct errors or argument in Appellants' brief that Appellants are not liable for interference for these reasons. Appellants have not raised in their motion to correct errors or argued in their brief that the special findings are incomplete or that they do not support the trial court's conclusions. Appellants do not raise these questions by attacking the trial court's conclusions as being contrary to law. The sole error raised by Appellants' Brief regarding the trial court's finding of interference is summarized in their Statement of the Issues:

"(1) Was the trial court correct in its finding set forth in Special Finding No. 22, that the execution of the mortgage to Pittsburgh Plate Glass was an interference by the defendants with the contract between Incentive Capital and the plaintiff.

"This finding was apparently based on the assumption that the mortgage to Pittsburgh Plate Glass was executed without the knowledge or consent of the plaintiff.

---

6. Indiana recognizes the tort of interference with contract relationships by inducing breach of contract. *Helvey* v. *O'Neill* (1972), 153 Ind. App. 635, 288 N.E.2d 553; *Tenta* v. *Guraly* (1966), 140 Ind. App. 160, 221 N.E.2d 577. The essential elements for recovery for tortious interference with a contract relationship by inducing breach of contract are: (1) existence of a valid and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. *Helvey* v. *O'Neill; Tenta* v. *Guraly, supra.* It has been held that an action for inducing a breach of contract will not lie against a party to the contract. *Hein* v. *Chrysler Corp.* (1954), 45 Wash.2d 586, 277 P.2d 708; *see Kiyose* v. *Trustees of Indiana University* (1975), 166 Ind. App. 34, 333 N.E.2d 886; *Canister Co.* v. *National Can Corp.* (D.Del. 1951), 96 F.Supp. 273. However, there are cases holding that one can be liable for conspiring to breach his own contract. *Wade* v. *Culp* (1939), 107 Ind. App. 503, 23 N.E.2d 615, *cited in Sinclair Refining Co.* v. *Atkinson* (7th Cir. 1961), 290 F.2d 312; *Worrie* v. *Boze* (1956), 198 Va. 533, 95 S.E.2d 192; *but see Cuker Industries, Inc.* v. *William L. Crow Construction Co.* (1958), 6 A.D.2d 415, 178 N.Y.S.2d 777; *Canister Co.* v. *National Can Corp., supra.* It has also been recognized that an officer or director of a corporation is not liable for inducing the corporation's breach of its contract if the officer or director acts within the scope of his official duties on behalf of the corporation and not as an individual for his own advantage. *See Kiyose* v. *Trustees of Indiana University, supra. H. F. Philipsborn* v. *Suson* (1974), 59 Ill.2d 465, 322 N.E.2d 45; *Widger* v. *Central School District No. 1* (1964), 20 A.D.2d 296, 247 N.Y.S.2d 364.

"This issue, therefore, is, was the consent of the plaintiff a necessary prerequisite to the authority of the defendants to execute this mortgage?"

This Court may not raise issues in a civil appeal *sua sponte*. Indiana Rules of Procedure, Trial Rule 59 (G) provides:

"Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court. . . ."

TR. 59 (B) requires that "claimed errors shall be specific rather than general, and shall be accompanied by a statement of the facts and grounds upon which the errors are based." The purpose of these requirements in TR. 59 is to afford the trial court an opportunity to correct its own errors. *Bud Gates Inc.* v. *Jackson* (1970), 147 Ind. App. 123, 258 N.E.2d 691. Limiting our review to the issue regarding special finding no. 22 as raised by Appellants may seem harsh in this case, but to find special finding no. 22 erroneous for reasons not presented to the trial court in the motion to correct errors would violate the purpose of TR. 59 and would be unfair to Nau, who has prepared his brief in light of the issues raised by Appellants. We, therefore, limit our review of special finding no. 22 to a determination of whether it is incorrect for the reason asserted by Appellants, i.e. was the trial court's finding of interference by assignment of the Incentive chattel mortgage erroneous because there was no need to get Nau's consent to the assignment.

The provision in the February 21st agreement regarding the Incentive chattel mortgage provides:

"We have further agreed to help protect you on this investment that you will not be subordinated but will be secured to our loan and that you will be further protected by our chattel on all of the equipment."

It can not be seriously contended that the above provision is clear and concise contract writing. It is not clear under the above provision whether Incentive and Nau were to share equally in the protection afforded by the Incentive chattel

mortgage or whether Nau was to take priority over Incentive to the extent of his $25,000 investment. It is also not clear how Incentive was to protect Nau's $25,000 investment—by assignment of the chattel mortgage to Nau or by voluntary payment to Nau of proceeds recovered by Incentive upon the chattel mortgage. However, it is not disputed by the parties that the above provision was intended to give Nau some protection in return for his $25,000 investment.

It is apparently Appellants' contention on appeal that there was an unwritten understanding between the parties that if financial considerations required, Incentive could assign this chattel mortgage without Nau's consent. It is true as Appellants assert that the evidence is undisputed that Daly was to handle the financial end of Universal's business and that Nau was to be the field man. There is conflicting evidence as to whether Nau knew of the plan to assign the Incentive chattel mortgage to PPG prior to his signing the February 21st agreement. However, Nau testified that he was relying on the February 21st agreement and understood that his $25,000 investment was to be secured by the chattel mortgage. When reviewing the evidence presented to the trial court to support a special finding of fact, we can not weigh the evidence nor consider the credibility of the witnesses. We can look only to the evidence and the reasonable inferences from it which support the trial court's finding. *Cole Real Estate Corp.* v. *Peoples Bank & Trust Co.* (1974), 160 Ind. App. 88, 310 N.E.2d 275; *First National Bank of Mishawaka* v. *Kamm* (1972), 152 Ind. App. 353, 283 N.E. 2d 563.

On its face, the February 21st agreement was to afford Nau protection for his $25,000 investment by means of Incentive's chattel mortgage. The evidence supports a reasonable inference that the February 21st agreement represented the entire agreement of the parties and that there was no collateral or subsequent oral agreement that if financial considerations required, Incentive could assign

its chattel mortgage without Nau's consent. We find no error in the trial court's special finding no. 22 as contended by Appellants Daly, Stewart and Incentive.

## II.

### *Damages Award*

Appellants contend that there is no evidence to support the trial court's award of damages in the amount of $25,000.00. The measure of damages for wrongfully inducing a breach of contract is compensation for the loss incurred. *Wade* v. *Culp, supra.* The burden of proving the amount of damages caused by Appellants' wrongful act was upon the plaintiff, Nau. See *Moore* v. *Waitt* (1973), 157 Ind. App. 1, 298 N.E.2d 456; *General Outdoor Adv. Co.* v. *LaSalle Realty Corp.* (1966), 141 Ind. App. 247, 218 N.E.2d 141. Once the trier of fact determines that the plaintiff has sustained this burden, this Court may not reverse the damages award if it is sustained by the evidence presented to the trier of fact. In determining whether there is sufficient evidence to support the damages award, we may not weigh the evidence nor judge the credibility of the witnesses. *Gene B. Glick Co.* v. *Marion Construction Corp.* (1975), 165 Ind. App. 72, 331 N.E.2d 26; *Bond* v. *Snyder Construction Co.* (1968), 142 Ind. App. 325, 234 N.E.2d 659. However, the damages award may not be based on mere conjecture, speculation or guesswork. *Scott* v. *Nabours* (1973), 156 Ind. App. 317, 296 N.E.2d 438; *Moore* v. *Waitt; Bond* v. *Snyder Construction Co., supra.*

In the instant case, the trial court determined that Appellants interfered with the Incentive-Nau agreement by assigning the Incentive chattel mortgage to PPG. The Incentive chattel mortgage was assigned on March 12, 1964 giving rise to the loss of any protection afforded by the chattel mortgage to Nau. March 12, 1964, is the date of the wrong.

Before we can determine whether there was sufficient evidence to allow the trial court to determine the value of the

items covered by the Incentive chattel mortgage on March 12, 1964, we must identify these items. The Incentive chattel mortgage was not produced at trial. The trial court made the following findings regarding Universal equipment and inventory covered by the Incentive chattel mortgage:

"8. . . . The Defendant Daly initiated the transfer and assignment of a chattel mortgage held by Incentive Capital Corporation on all of the equipment and inventory of Universal Delta Central, Inc. to Pittsburgh Plate Glass Company. . . . This new chattel mortgage was on the same equipment and inventory as the existing chattel mortgage held by Incentive Capital Corporation and assigned to Pittsburgh Plate Glass Company.

"9. Virtually all of the assets of Universal Delta Central, Inc. were painting equipment and inventory, and they were secured by this chattel mortgage."

\* \* \*

"15. On February 21, 1964, Universal Delta Central, Inc. confirmed the execution of a new chattel mortgage to Pittsburgh Plate Glass Company, which was a substitution of the old chattel mortgage previously held by Incentive Capital Corporation and assigned to Pittsburgh Plate Glass Company. These chattel mortgages were on all of the equipment and inventory of Universal Delta Central, Inc."

It is clear from the above findings that the trial court considered that the Incentive chattel mortgage covered all the equipment and inventory of Universal.

Although the Incentive chattel mortgage was not produced at trial, the trial court did have before it a bill of sale showing Universal to be the purchaser of certain "chattels, goods and personal property" described on an attached sixteen page list of equipment and inventory. The only evidence concerning what equipment and inventory of Universal the Incentive chattel mortgage covered was testimony by Daly that the Incentive chattel mortgage covered the same items listed on the Universal bill of sale dated October 22, 1963. Daly further testified that some of the items listed on the bill of sale had been lost or stolen so that the list of equip-

ment and inventory attached to the bill of sale was of doubtful accuracy. In late February or early March, Nau made a list of equipment and inventory of Universal showing the replacement value of the items listed. However, there was no showing regarding which items on the Nau inventory were also listed on the Incentive chattel mortgage. Daly further testified that the new chattel mortgage from Universal to PPG contained items not listed on the Incentive chattel mortgage. The PPG chattel mortgage was entered into evidence at trial and discloses on its face that the PPG chattel mortgage was also based upon the sixteen page list of equipment and inventory attached to the October 22, 1963 bill of sale with one additional page listing thirty (30) additional items. We can only conclude from the above uncontroverted evidence that the Incentive chattel mortgage covered the same items listed on the October 22, 1963 bill of sale and did not cover all the equipment and inventory of Universal.

The trial court made no finding of fact regarding the value of the items covered by the Incentive chattel mortgage on March 12, 1964. The trial court's only findings of fact regarding damages are:

"19. The equipment owned by Universal Delta Central, Inc. and secured under the Incentive Capital Corporation chattel mortgage had a fair market value on the 21st of February, 1964, sufficient to secure the Plaintiff's $25,000.00.

"25. The Defendants, and each of them, represented to Plaintiff on or about February 21, 1964, that the chattel mortgage held by Incentive Capital Corporation on all of the equipment of Universal Delta Central, Inc. was of sufficient value to secure Plaintiff in his payment of $25,000.00 into Universal Delta Central, Inc."[7]

---

7. Nau testified at trial that he was told prior to signing the February 21st agreement that the Incentive chattel mortgage covered all the equipment and inventory of Universal. However, we would point out that Nau's complaint did not allege fraud, nor did the trial court make any finding of fraud. Also, Nau's complaint did not attempt a contract recission for lack of consideration. We can not justify the trial court's damages award on unlitigated theories of recovery.

Under pre-TR. 52 cases, there was a presumption that all facts not contained in requested special findings of fact were regarded as not proved by the party having the burden of proof. *Miller* v. *Ortman* (1956), 235 Ind. 641, 136 N.E.2d 17; *Korschot* v. *Leevy* (1961), 135 Ind. App. 411, 178 N.E.2d 750. However, TR. 52(D) now provides that "[t]he court's failure to find ₋pon a material issue upon which a finding of fact is required by this sub-division or this rule shall not be resolved by any presumption and may be challenged under subdivision (B) of this rule; . . ." In the instant case, neither party has challenged the completeness of the special findings of fact under TR. 52(B). Since the incompleteness of the special findings has not been challenged on appeal, we will treat the trial court's findings as special findings of fact upon less than all the issues under TR. 52(D). We will no longer indulge in the presumption that failure to make a necessary special finding of fact results in a finding against the party having the burden of proof. *See Hunter* v. *Milhous* (1973), 159 Ind. App. 105, 305 N.E.2d 448; *Sekerez* v. *Board of San. Comm'rs* (1974), 160 Ind. App. 13, 312 N.E.3d 98 (on rehearing). We must, therefore, determine whether there was sufficient evidence to support the trial court's implicit determination that the items covered by the Incentive chattel mortgage equalled $25,000.00 on March 12, 1964.

The usual method of determining value of personal property is by establishing the fair market value of the property involved. *See Sikora* v. *Barney* (1965), 138 Ind. App. 686, 207 N.E.2d 846. Fair market value has been defined as the price at which a willing seller and willing buyer will trade. *Sikora* v. *Barney, supra*. There was no direct evidence of the fair market value of the items listed on the Incentive chattel mortgage on March 12, 1964. The trial court attempted unsuccessfully to elicit this information in questioning Daly as follows:

"Q. Do you know what the face value of the mortgage was, the October 13th or 14th mortgage? Do you know how much it called for to secure?

"A. No, I don't, Your Honor. I can only speculate on it. I don't know."

To support the trial court's damages award, Nau points to evidence that the Incentive chattel mortgage was given to secure an original loan to Universal in the amount of $60,000 or $75,000. However, it is merely speculation that the items covered by the chattel mortgage equalled the value of the loan which it secured. *Cf. Christensen* v. *McAtee* (1970), 256 Ore. 333, 473 P.2d 659. Nau also asserts that the list of inventory and equipment, which he prepared in late February or early March, 1964 and which was admitted into evidence, supports the trial court's damages award. As previously discussed, there was no showing regarding which items on the inventory were covered by the Incentive chattel mortgage. Although the value of equipment and inventory shown on the Nau inventory is well over $25,000.00, Nau admitted at trial that the figures on this inventory were replacement values and not fair market values.

As stated earlier in this opinion, the only evidence showing the equipment and inventory covered by the Incentive chattel mortgage is the list of items attached to the October 22, 1963 bill of sale. The bill of sale discloses that the listed items were sold to Universal for $50,000.00. Regarding the use of original cost to support a determination of fair market value, Professor McCormick stated in his *Handbook on the Law of Damages*:

"[T]he original *cost* of the property to the owner is usually and properly allowed to be shown, in respect to personal property. . . . Except in the case of new articles, original cost, though admissible, would not alone be sufficient to establish value; in addition, evidence from which the extent of its depreciation could be ascertained would be essential." C. McCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 46, at 176-77 (1935).

There is no evidence in the record from which the extent of depreciation of the chattels listed on the October 22, 1963 bill of sale could be determined. The original cost of the items purchased by Universal will not justify the trial court's damages award.

The only other evidence in the record relevant to the trial court's damages award is evidence that PPG later foreclosed the new chattel mortgage from Universal and recovered $8,556.50 at a foreclosure sale on October 9, 1964. As pointed out previously in this opinion, the new chattel mortgage from Universal to PPG covered items not listed on the October 22, 1963 bill of sale and evidently not covered by the Incentive chattel mortgage. There is no evidence that all the items sold at the subsequent PPG foreclosure sale were items listed on the Incentive chattel mortgage. Even if it were possible to determine which of the items sold at the subsequent PPG foreclosure sale were also listed on the Incentive chattel mortgage, there is no evidence that the value of the items sold at the subsequent forced sale was representative of the fair market value of these same items on March 12, 1964. Since we have found no evidence to support the trial court's award of damages, we must reverse the trial court's judgment and remand with instructions to grant a new trial limited to the issue of damages only. Indiana Rules of Procedure, Appellate Rule 15(M); *Bob Anderson Pontiac, Inc.* v. *Davidson* (1973), 155 Ind. App. 395, 293 N.E.2d 232; *Zoellers* v. *Loi* (1918), 68 Ind. App. 395, 120 N.E. 623.

## III.

### Incidental Findings

Finally, Appellants challenge several other special findings of fact on the ground that they are contrary to or not supported by the evidence. First, Appellants challenge the following statement contained in special finding no. 8: "The

Defendant Daly initiated the transfer and assignment of a chattel mortgage held by Incentive Capital Corporation on all of the equipment and inventory of Universal Delta Central, Inc. to Pittsburgh Plate Glass Company. . . ." Appellants contend that the evidence shows that this transfer was initiated by the directors of Universal rather than by Daly. Although the evidence in the record is conflicting as to who initiated the negotiations with PPG, we find sufficient evidence to support the trial court's finding that Daly initiated the negotiations. As we have pointed out, this Court may not weigh the evidence nor consider the credibility of the witnesses when reviewing the evidence to support a special finding of fact. *Cole Real Estate Corp.* v. *Peoples Bank & Trust Co.; First National Bank of Mishawaka* v. *Kamm, supra.*

Appellants also challenge special findings nos. 12, 13, 14, 18, 20 and 24. We will not further burden this opinion by setting out the above challenged findings. Although we have found some of these findings to be erroneous as contended by Appellants, none of these challenged findings contributed to the trial court's conclusions of law, and we have considered them as mere surplusage. Appellants have failed to demonstrate any prejudice from these incorrect findings and we find none. Any error regarding these findings of fact was harmless. *Registration & Management Corp.* v. *City of Hammond* (1972), 151 Ind. App. 471, 280 N.E.2d 327; *Voorhees-Jontz Lumber Co.* v. *Bezek* (1965), 137 Ind. App. 382, 209 N.E.3d 380.

The judgment is affirmed in part and remanded in part with instructions to grant a new trial limited to the issue of damages.

Hoffman, J., and Garrard, J., concur.

NOTE.—Reported at 339 N.E.2d 71.